(No. 25306.—
CLARENCE J. TAYLOR et al. Appellants, vs. THE VILLAGE
OF GLENCOE, Appellee.

*Opinion filed December 15, 1939—Rehearing denied Feb. 7, 1940.*

WILSON, C.J., and JONES, J., dissenting.

ROYAL J. SCHMIDT, and WILLIAM N. BRADY, for appellants.

MAURICE G. SHANBERG, (ALEXANDER H. MARSHALL,
of counsel,) for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

Clarence J. Taylor and Sigred Taylor filed a complaint
for an injunction to restrain the village of Glencoe from
enforcing its zoning ordinance against the property of the
plaintiffs. The provisions of the ordinance prohibited the

use of this property for other than residential purposes. The plaintiffs further sought to restrain interference with the use of their property for certain commercial uses permitted in the commercial district as designated by the ordinance. The reasonableness of the zoning ordinance, as it is applied to the property of the plaintiffs, is attacked because it is claimed to be an arbitrary discrimination and does not bear any relation to the public health, comfort, safety or welfare. This matter was referred to a master who recommended that the complaint be dismissed for want of equity. The trial court approved the finding of the master, and the case is now before us on direct appeal, the trial court having certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

Glencoe is a residential suburban village, directly north of the village of Winnetka, having a population of about 7000 inhabitants. The zoning ordinance of Glencoe was adopted in 1921. It designated the land upon which the Taylor property is located, and several adjoining pieces, as "C" residential, permitting the use of the property for single-family dwellings only. The property in question was purchased many years ago by the father of the plaintiffs. After his death it passed to his children who mortgaged the property and subsequently lost it through foreclosure. The plaintiffs acquired the property in 1931 by redemption from the foreclosure sale. In 1937, they filed a request with the board of trustees of the village of Glencoe seeking to have the property in question rezoned as commercial or business property. This petition was denied.

When this suit was commenced the property of the Taylors was divided by a diagonal line in such a way that a small triangular section was located in the village of Winnetka and the remainder in the village of Glencoe. Prior to the hearing before the master, proceedings were taken by both villages to disconnect the triangular section

from the village of Winnetka and annex it to the village of Glencoe. Under this reestablishment of the village boundary lines, all the Taylor property is now situated within the boundaries of the village of Glencoe.

The following plat shows the location of the property in dispute, as well as the location of and uses to which property adjoining it is now put.

The property in question is located on the northeast corner of Glencoe road and Scott avenue. South of Scott avenue, in Winnetka, Glencoe road becomes Linden avenue. The residence of the Taylors is on the corner on lot 10. Lot 9, also owned by the plaintiffs, is vacant and unimproved. Directly east of lot 9, on lots 7 and 8, is located

the ice plant of the North Shore Ice Company. Directly north of the Taylor property, facing on Glencoe road on lots 5 and 6, there are other buildings of the North Shore Ice Company. The lumber yard of the Mercer Lumber Company is located on lots 2, 3, 4, 5 and 6, north of the ice company's property on Glencoe road. Both of these industrial uses were in existence when the ordinance was adopted. On the southeast corner of Linden avenue, across the village line in Winnetka, a gasoline and greasing station now operates. Diagonally across the same intersection to the southwest, likewise in Winnetka, is another gasoline station. The northwest corner of Scott avenue and Glencoe road is, at present, vacant. Immediately west of this vacant property, fronting on Scott avenue, there are residences. Directly north of this vacant property, facing on Glencoe road, there is a commercial florist shop. The Chicago and Northwestern Railroad's main line lies just east of the ice company's plant, and its switch-track facilities extend into the yards of the Mercer Lumber Company. Glencoe road and Linden avenue are part of a through highway, extending out of the city of Chicago. The evidence indicates that during a 36-hour traffic count, 26,000 vehicles passed the property in question.

This court has established the right and the power of cities and villages to enact zoning ordinances as an exercise of their police power. (*City of Aurora* v. *Burns,* 319 Ill. 84; *People* v. *City of Rockford,* 363 id. 531; *Reschke* v. *Village of Winnetka,* id. 478.) Under this power the city may impose certain regulations upon the use of property by its owners. Such restrictions must bear a real and substantial relation to the public health, safety, morals or welfare. (*Koos* v. *Saunders,* 349 Ill. 442; *Forbes* v. *Hubbard,* 348 id. 166; *Catholic Bishop* v. *Kingery,* 371 id. 257.) If a restrictive ordinance bears no real and substantial relation to the preservation of the public health, safety or welfare, but is, in fact, a capricious invasion of property rights,

then such an ordinance becomes invalid and cannot be sustained. (*Forbes* v. *Hubbard, supra; Reschke* v. *Village of Winnetka, supra.*) In *Johnson* v. *Village of Villa Park,* 370 Ill. 272, this court said: "In considering the question of whether the particular ordinance, is, in fact, in the interest of the public welfare, each case must be determined upon its own peculiar facts. A zoning ordinance may be valid in its general aspects, but when applied to a particular piece of property and a particular set of facts, be so arbitrary and unreasonable as to result in confiscation of the property. In such instance, when applied to designated real estate, the ordinance is void."

It is apparent from an examination of the map and the photographs in evidence, that the property in question is virtually surrounded by commercial and industrial uses. The plant of the North Shore Ice Company, with its accompanying industrial processes, completely encloses the residence of the plaintiffs to the east and to the north. The lumber yard directly north of the ice company's property constitutes a further industrial use in the near vicinity of the plaintiffs' property. These industrial uses do not conform to the residential tenor of the property as established by the original zoning ordinance. The commercial character of the surrounding property is further emphasized by the presence of two gasoline stations directly across the street from plaintiffs' property and located in the village of Winnetka. This situation makes this case similar on its facts to *Forbes* v. *Hubbard, supra,* and *Reschke* v. *Village of Winnetka, supra.* What this court said in those cases is controlling in this one, and the zoning ordinance, as applied to this particular piece of property, is arbitrary and unreasonable. It bears no substantial relation to the public health, safety, morals or welfare, and, as such, amounts to a capricious invasion of the property rights of the plaintiffs.

There is no question in the case before us of the contemplated commercial or industrial use of plaintiffs'

property encroaching upon the nearby residential property. These encroachments have been present for many years and any damage that may be caused by an additional commercial or industrial use is negligible. The value of the Taylor property for residential purposes has constantly depreciated while at the same time, and by the same process, it has been enhanced in value for commercial uses. The evidence varies as to the value of the property for residential or commercial purposes but it is admitted by the appellee that the property of the plaintiffs is four times as valuable for commercial uses as it is for residential purposes. The plaintiffs claim that the commercial value is ten times greater than any possible residential worth. While the effect of the ordinance on the valuation of the plaintiffs' property is not necessarily controlling it is, nevertheless, a factor that must be taken into consideration. *Forbes* v. *Hubbard, supra; Reschke* v. *Village of Winnetka, supra.*

The appellee relies strongly on *Rothschild* v. *Hussey,* 364 Ill. 557, and *Evanston Best & Co.* v. *Goodman,* 369 id. 207. These cases are far different on the facts from the case at bar, and are not applicable to this situation.

The classification established by the zoning ordinance of the village of Glencoe, as applied to the plaintiffs' property, is arbitrary and unreasonable, and, failing to bear any relation to the public health, safety, morals and welfare, it cannot be sustained.

The decree of the circuit court is reversed, and the cause remanded to the circuit court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. Chief Justice Wilson, dissenting:

Again, a carefully considered zoning ordinance of a residential suburban community has been declared invalid as applied to a particular parcel of property. In my judgment, the ordinance is not vulnerable to constitutional assault and

the decree of the circuit court should be affirmed. Since 1921 when the village of Glencoe adopted its zoning ordinance, a substantial number of persons, relying upon the residential restrictions of the ordinance, have purchased or improved properties for use as homes within a radius of five hundred feet from the property owned by plaintiffs. To grant the latter the privilege of converting their property to commercial uses will greatly depreciate, if not actually destroy, the value of other residential properties within the five-hundred-feet radius. In order to rectify what may be deemed an injustice to the owners of a single parcel of real estate, the property of others and the character of the village itself are to be subjected to irreparable injury. The majority opinion determines the reasonableness of the zoning restrictions by applying them to plaintiffs' property, alone, instead of to all the property in the district. In short, the conclusion that plaintiffs are entitled to an injunction restraining the defendant village from enforcing its zoning ordinance against their property rests upon the premise that the ordinance is unreasonable as to this solitary tract of land. Recourse to the Illinois Zoning act discloses that the premise is fallacious. Section 1 of that act (Ill. Rev. Stat. 1939, chap. 24, par. 66, p. 393) describes the objectives of the statute, as follows: (1) the securing of adequate light, pure air and safety from fire and other dangers; (2) the conservation of the taxable value of land and buildings throughout the municipality; (3) the lessening or avoidance of congestion in the public streets, and (4) the promotion otherwise of the public health, safety, comfort, morals, and welfare. The first section further provides that all ordinances passed conformably to the authority of the act shall make due allowance for (1) existing conditions; (2) the conservation of the property values; (3) the direction of building development to the best advantage of the entire city, village or incorporated town, and (4) the uses to which property is devoted at the time of the enactment of the

ordinance. These controlling considerations, and particularly the provision of the zoning law concerning the conservation of the taxable value of land and buildings throughout the municipality, are ignored by the opinion of the court. No contention is made that the ordinance of 1921 failed to satisfy the applicable statutory provisions when enacted. Where a general zoning ordinance is passed and persons buy property in a certain district they have a right to rely upon the rule of law that the classification will not be changed unless the change is required for the public good. (*Kennedy* v. *City of Evanston*, 348 Ill. 426; *Phipps* v. *City of Chicago*, 339 id. 315.) Here, the requisite showing simply has not been made.

The majority opinion declares that the presence of two gasoline stations in the village of Winnetka reflects the commercial character of the surrounding property. The fact that property in the north end of the neighboring village may be devoted to industrial uses, it is submitted, furnishes no reason for invalidating the zoning ordinance of Glencoe applying solely to the property within its own territorial limits. Nor is the alleged fact that plaintiffs' property may be four times as valuable for commercial uses as it is for residential purposes decisive. (*Evanston Best & Co.* v. *Goodman*, 369 Ill. 207; *Rothschild* v. *Hussey*, 364 id. 557.) Although plaintiffs' property may be more valuable if devoted to business purposes, the fact remains that the value of their property has not decreased since the enactment of the ordinance but, on the contrary, has actually increased in value since 1921. In the recent case of *Evanston Best & Co.* v. *Goodman, supra,* which, in my opinion, closely parallels the present case, we said: "Petitioner emphasizes the fact that its property would be more valuable if zoned for commercial purposes, but this fact exists in every case where the intensity with which property may be used is restricted by zoning laws. While the extent to which property values are changed by a zoning

ordinance is a proper consideration in determining the validity of the ordinance, [citation] the profit that would accrue to individual property owners if zoning restrictions were removed must be weighed against the detriment to the public welfare that would result from such action. * * * Where * * * it is shown that restrictions imposed by such a law protect the health, safety and welfare of the public, they must be sustained, even though private interests are to some extent impaired." A recurrence to the following apt language used by this court in *City of Aurora* v. *Burns,* 319 Ill. 84, is perhaps necessary: "Zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs. * * * No general zoning plan, however, can be inaugurated without incurring complaints of hardship in particular instances. But the individual whose uses of his property may be restricted is not the only person to be considered. The great majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration."

Although this court has recently proclaimed that it is not a zoning commission and that all questions with respect to the wisdom or desirability of particular zoning restrictions must be addressed to the legislative bodies specifically created to determine them, (*Evanston Best & Co.* v. *Goodman, supra; Rothschild* v. *Hussey, supra;*) it is manifest that the decision in the case at bar is a departure from this sound and salutary rule. In *Morgan* v. *City of Chicago,* 370 Ill. 347, we stated that a decision of the cause depended primarily on the facts which had been passed upon by five different agencies created for the purpose, namely, the board of appeals, a sub-committee of the city council, the council itself, the master in chancery, and the chancellor, pointing out that these agencies all concurred in a finding of ultimate fact. The principle followed in *Morgan* v. *City of Chicago, supra,* sustaining a variation in a zoning ordinance to per-

mit the erection of a gasoline filling station in a neighborhood zoned for residence or apartment purposes, is applicable to the converse situation which obtains here where the board of appeals, the master and the chancellor have successively made a finding of ultimate fact in favor of the village's zoning restrictions. The master reached the proper conclusion that the reasonableness of the ordinance in controversy and of the advisability of the proposed change of zoning was a debatable question, "the latitude of which is considerably limited in scope, in view of the testimony submitted that the value of properties belonging to a large number of nearby residential owners would be substantially lessened if a change in zoning were made."

Plaintiffs owned a one-sixth interest in the property in controversy when the zoning ordinance of 1921 was passed. They made no objection and interposed no protest with respect to the zoning restrictions and continued to use their property for sixteen years thereafter until an application for rezoning was filed in 1937. The remaining outstanding title to the property was purchased in 1931. A that time plaintiffs obviously were aware of the zoning restrictions and of the surrounding physical conditions, including the non-conforming uses near their property. During this period of sixteen years, as previously stated, other persons moved into the neighborhood, bought land, built and improved residences in reliance upon the restrictions of the ordinance of 1921, which, it must be remembered, applied to their property as well as to property owned by plaintiffs.

For the foregoing reasons, among others, I am constrained to record my dissent.

Mr. JUSTICE JONES, also dissenting.