(No. 30013.—

OFFNER ELECTRONICS, INC., Appellant, *vs.* PAUL GER-
HARDT, JR., *et al.,* Appellees.

*Opinion filed November 20, 1947.*

HOFFMAN & HOFFMAN, (J. HERZL SEGAL, of counsel,) both of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, and JOSEPH F. GROSSMAN, (L. LOUIS KARTON, MAURICE NATHANSON, and HERMAN SMITH, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

February 20, 1946, the plaintiff, Offner Electronics, Inc., brought an action in the superior court of Cook County against the defendants, the commissioner of buildings of the city of Chicago and the city itself, seeking to have the zoning ordinance, as amended on December 3, 1942, adjudged constitutionally invalid in its application to plaintiff's property. From a judgment denying the relief sought, plaintiff prosecutes this appeal, the trial judge having certified that the validity of a municipal ordinance is involved and that, in his opinion, the public interest requires an appeal to this court.

Plaintiff owns a parcel of real estate on the west side of the street at 5320 North Kedzie Avenue, in Chicago, improved by a building erected in July, 1942, at the request of the Army Air Forces of the United States for the development and production of products deemed essential to the successful conduct of World War II. The Army Air Forces requested plaintiff to erect a larger building but, owing to the shortage of building materials, completion of the structure, as originally planned, was deferred. Plaintiff commenced operations in the building September 1, 1942. It was then developing a guided missile for the air forces and, according to Dr. Offner, president and principal shareholder of the corporation, this project was the purpose of the company's promotional work and the reason for constructing the building. Plaintiff is now engaged in the business of developing, assembling, repairing and stor-

ing electronic machines such as electro-encephalographs and electric shock therapy apparatus. The component fabricated parts purchased elsewhere are assembled into the completed electronic instruments which plaintiff sells to the Federal government, hospitals, doctors, universities and, to a limited extent, aircraft companies. It manufactures and fabricates small incidental parts required in the assembly process. All of the operations described, including loading, unloading, storage, manufacturing, processing and assembling the materials and products, are carried on entirely within plaintiff's building in a manner not injurious or offensive to the occupants of adjacent premises. There is no emission of odors, fumes, gases, dust, smoke, noise or vibrations. The company has twelve employees including its president and the night watchman.

The present one-story building has a frontage on Kedzie Avenue of 80 feet, a depth of 40 feet, and is 12 feet high. Reinforced concrete, steel sashes and reinforced concrete columns were used to render it fireproof and sabotage proof. The cost of construction was $22,500, exclusive of the land. Originally, the company planned to erect a building extending approximately back to the alley between Kedzie Avenue and Sawyer Avenue, the next street paralleling Kedzie Avenue to the west. Truss footings were put in the west wall when the building was constructed to allow the addition to be made without interfering with the truss structure. The total area of the interior of the building inside is 3000 square feet. To the rear of the building now standing is a foundation to avoid underpinning at a later date, a not unusual precaution where the owner's program calls for future extensions.

Plaintiff's property at 5320 Kedzie Avenue is in the second of four city blocks between Foster (5200 North) and Bryn Mawr (5600 North) Avenues. Kedzie Avenue is a heavily-traveled thoroughfare, with both streetcar and automobile traffic. A streetcar line is located in the middle

of the street, the northern terminus of the line being Bryn Mawr Avenue. Foster Avenue, perhaps one of the most heavily traveled through streets in Chicago, an east and west thoroughfare, is a block and a half south of plaintiff's property. Bryn Mawr Avenue, likewise a through street, four blocks north, is also well traveled. Both Foster and Bryn Mawr Avenues have many business districts. Beginning on the east side of Kedzie Avenue, at its intersection with Foster Avenue, there is one continuous building line from Foster Avenue to Bryn Mawr Avenue, without any street or alley intersections. Property of the Sanitary District of Chicago lies immediately to the east of Kedzie Avenue and extends to the North Shore channel of the sanitary district. On the east side of Kedzie Avenue, beginning at Foster Avenue, a florist occupies a one-story brick building extending north about twenty-five feet. To the north are seven greenhouses with a frontage of about three hundred feet. Beyond the seventh greenhouse is vacant property. Next are a brick bungalow, two two-story stucco residences, and a two-story frame dwelling. The three houses last mentioned are old buildings. Beyond contiguous vacant property is a combination frame and brick two-story house. To the north is a material supply company, occupying a two-story combined brick and frame residence as an office and for storage purposes. A long, low, rambling frame structure is also on the premises. Photographs show a truck, a derrick, large piles of black dirt on the premises,—property mildly described, even though an old landmark, as unsightly,—and a brickyard. Beyond the next strip of vacant property are two two-story frame residences. The remainder of the street to Bryn Mawr Avenue is vacant.

On the west side of Kedzie Avenue, commencing at its intersection with Foster Avenue, the first 400 feet are vacant. Next are a one-story industrial and a two-story factory building, and more vacant property. Commencing

with the 5300 block, there are, in order, a four-story apartment building containing seventeen apartments and a cosmetics factory in the basement, a vacant lot, plaintiff's factory building, three machine shops, vacant property and a brick bungalow. Vacant property extends north to a laundry, a substantial two-story building with a tall smokestack about 50 or 60 feet high. More vacant property lies north of the laundry until a short distance south of Bryn Mawr Avenue is reached where there is a one-story brick building containing a tavern. Beyond more vacant property, a one-story store is located at the corner of Bryn Mawr and Kedzie Avenues. The foregoing description discloses a large percentage of the frontage on Kedzie Avenue is unimproved. With the exception of Kedzie Avenue, the immediate neighborhood bounded by it to the east, Crawford Avenue one mile west, Foster Avenue to the south and Bryn Mawr Avenue to the north, is largely residential. In particular, the buildings on Sawyer Avenue, the first street west of Kedzie Avenue, between Foster and Bryn Mawr Avenues, are apartment buildings, duplex residences and single-family dwellings.

North Park College, a junior college, is located on Foster Avenue at its intersection with Kedzie Avenue. The grounds extend west for several blocks on Foster Avenue. An old building and several modern buildings stand on the campus. A new administration building is being erected at a construction cost of $250,000. River Park, a public park directly southeast of Foster Avenue, is three blocks from the block where plaintiff's property is located.

In July, 1942, when plaintiff's building was constructed and prior to December 3, 1942, the block in which it was located was zoned for commercial purposes, permitting the construction of buildings of the character erected by plaintiff and light manufacturing and assembling. On December 3, 1942, the city council passed a rezoning ordinance changing the classification of the area in which plaintiff's

property is located from commercial use to duplex-residence use. A duplex residence is defined as a building entirely separated from any other building by space, designed, arranged, used or intended to be used as two apartments, one of which is on a floor above the other. A nonconforming use is described as a use not conforming with the regulations applicable to the use district or the volume district in which this use is made. The ordinance declares that any lawful use of property on the effective date of the ordinance as amended which, by virtue of its provisions, is a nonconforming use shall be permitted after the ordinance becomes effective, subject to the limitations described. In particular, the ordinance provides that a building designed or arranged for a nonconforming use or devoted to such use on the effective date of the ordinance shall not be reconstructed, altered or enlarged unless it is designed, arranged and intended for a conforming use, with exceptions not material to the present inquiry.

In September, 1945, plaintiff applied to the commissioner of buildings for a permit to increase the area of its present building by approximately 4800 square feet by erecting an addition on the rear of its lot. Plaintiff tendered to the commission a set of plans and specifications, complying in all respects with the requirements of the building code of the city. The extension, a one-story addition, no higher than the present building, would be 80 by 60 feet. The total depth of the building would be 100 feet, leaving a space of 10 feet between the rear of the building and the alley. The contemplated construction of the extension is reinforced concrete, the same as is used in the present structure. From Kedzie Avenue, there would be no difference in the appearance of the factory. Contracts were made for building an extension involving a cost of between $35,000 and $36,000. The proposed operations in the new structure include the assembly of electric shock therapy apparatus used in treating the insane, electo-

encephalographs used for locating brain tumors, and instruments for synchronizing propellors on airplanes. Plaintiff's application for a permit was refused.

A realtor, engaged in the real-estate business for fifty-one years, testified that he was familiar with plaintiff's property; that, in his opinion, the value of Kedzie Avenue frontage in the 5300 block for commercial purposes is $50 per front foot and, for duplex residence purposes, about $30 a foot; that plaintiff's building is a special-purpose building not easily adapted to general commercial uses, and that the land to the rear of plaintiff's building is not adapted for any purpose other than commercial use. The witness testified that no duplex apartments have been built in plaintiff's block since it was rezoned for duplex apartments. He expressed the opinion that the presence of an addition to plaintiff's building would not in any way affect the value of the duplex buildings west of this land, namely, on Sawyer Avenue and other streets west of Kedzie Avenue. A retired carpenter, the owner of the seventeen apartment building at 5300 North Kedzie Avenue and a vacant lot immediately next to the apartment building, testified that he paid $3500 for the 50 feet of vacant property in early 1945.. From his cross-examination it appears, however, that the witness paid only $1300, and assumed liability for $2200 or $2300 in delinquent taxes which remained unpaid at the time of the trial. Six persons residing, and a seventh, the owner of property, on nearby Sawyer Avenue expressed opposition to the proposed extension of and addition to plaintiff's factory. Of these, one declared that she objected to the extension of the factory building, commenting, "I think it really spoils the neighborhood, because it is one of the prettiest neighborhoods you can come into." Another said that she enjoyed the clear view from her back porch. at the present time and objected to the expansion of the factory building, "Because I have tenants, and as soon as summer comes will

rent a flat, and then they say we object to it back there, we won't rent. I don't like it at all because they will hinder me to rent out."

The precise issue presented for decision in the trial court and upon this appeal is the reasonableness of the restriction of the zoning ordinance, as amended on December 3, 1942, as applied to plaintiff's property and, particularly, whether the restriction preventing the use of its property for the nonconforming use previously described bears any rational relation to the public morals, health, safety, comfort or general welfare. Plaintiff contends that its building is totally unsuited for residential purposes and that the present buildings on Kedzie Avenue are predominantly devoted to commercial purposes; that its property is a "one-purpose building," suited and adaptable only for its singular type of business and even uneconomical for this purpose without the addition desired to be erected. Charging that the land was purchased and the premises improved in reliance upon the existing zoning classification and that the rezoning is invalid as against its property under section 2 of article II of our constitution and the fifth and fourteenth amendments to the Federal constitution, plaintiff has recourse to section 1 of article 73 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1945, chap. 24, par. 73-1,) providing, in pertinent part, "In all ordinances passed under the authority of this article, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire municipality and the uses to which the property is devoted at the time of the enactment of such an ordinance. The powers conferred by this article shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted, * * *." The relief sought and denied in the trial court was a writ of *mandamus* to compel the commissioner of

buildings to issue a building permit allowing plaintiff to construct the proposed addition to its property and to permanently restrain the city from enforcing the zoning ordinance, as amended, against plaintiff's property.

The power of a city to adopt a comprehensive zoning ordinance bearing a rational relation to the public health, comfort, morals, safety and general welfare rests upon a legitimate exercise of the police power. (*2700 Irving Park Building Corp.* v. *City of Chicago*, 395 Ill. 138; *Harmon* v. *City of Peoria*, 373 Ill. 594.) Legislative determination as to what constitutes a valid exercise of the police power is not conclusive. Whether the means employed bear a substantial relation to the public health, comfort, safety or welfare, or are essentially arbitrary and capricious, is a question open to judicial review. (*2700 Irving Park Building Corp.* v. *City of Chicago*, 395 Ill. 311; *Mercer Lumber Companies* v. *Village of Glencoe*, 390 Ill. 138; *Evanston Best & Co.* v. *Goodman*, 369 Ill. 207; *Forbes* v. *Hubbard*, 348 Ill. 166.) The determination of whether a particular ordinance is, in fact, in the interest of the public welfare is dependent in each case upon the factual situation presented. (*Johnson* v. *Village of Villa Park*, 370 Ill. 272; *Reschke* v. *Village of Winnetka*, 363 Ill. 478.) Again, a zoning ordinance may be valid in its general aspects and yet as to the facts involving a particular parcel of real estate may be so clearly unreasonable as to result in confiscation. *Harmon* v. *City of Peoria*, 373 Ill. 594; *Taylor* v. *Village of Glencoe*, 372 Ill. 507; *Johnson* v. *Village of Villa Park*, 370 Ill. 272; *People ex rel. Kirby* v. *City of Rockford*, 363 Ill. 531; *Ehrlich* v. *Village of Wilmette*, 361 Ill. 213.

In ascertaining whether the application of the challenged zoning ordinance to plaintiff's property satisfies constitutional guaranties, the character of the property in the immediate neighborhood requires consideration. Kedzie Avenue is not only a streetcar-line street but one of the

principal arterial thoroughfares on the west side of Chicago, Halsted Street, Ashland and Western avenues being to the east and Crawford Avenue to the west. Traffic, both streetcar and automobile, is heavy. It is common knowledge that a busy streetcar-line street is not an especially desirable location for residential purposes. Nor does plaintiff's concession that it might be appropriate for apartment buildings mean that it is a choice location for duplex dwellings. (*Forbes* v. *Hubbard,* 348 Ill. 166.) On both sides of Kedzie Avenue in the four blocks extending from Foster Avenue to Bryn Mawr Avenue there are only six two-story residences, two of them being of stucco construction and quite old. But one building in the four blocks between Foster and Bryn Mawr Avenues on the west side of Kedzie Avenue conforms to the present ordinance, all other structures, with the exception of the apartment building, being commercial. The character of the restriction assailed is further illustrated by the character of the buildings facing Kedzie Avenue in the area mentioned. Business buildings include a florist shop, seven greenhouses, a material supply company, a brickyard, a one-story industrial building, a two-story factory building, plaintiff's factory, three machine shops, a laundry building and a tavern. On each side of the street there is, as recounted, considerable vacant property. A consideration of the general character of these four blocks on Kedzie Avenue permits of but one conclusion, namely, that it is essentially commercial in character.

Competent testimony of a real-estate expert is to the effect that the highest and best use of plaintiff's entire lot is for industrial purposes and, further, that the value of Kedzie Avenue frontage for duplex-residence purposes is much less than its value for commercial purposes. Evidence of a desire by any individual or company interested in erecting duplexes is wanting. The factor of compara-

tive values is an element to be considered in determining the reasonableness of the ordinance, as applied to plaintiff. It is true that the neighborhood immediately west of Kedzie Avenue, and especially North Sawyer Avenue, is residential. It does not follow that the residential character of North Sawyer Avenue should control the use to which plaintiff's property on Kedzie Avenue is to be put. Indeed, the zoning of streets lying along the edges of residential districts for business and commercial purposes is a recognized method of zoning. (*Forbes* v. *Hubbard*, 348 Ill. 166.) Plaintiff's property is not characterized by the residential area to the west of it on North Sawyer Avenue but, instead, by the business district on Kedzie Avenue of which it is a component part. We find it difficult to perceive how the modest addition to plaintiff's building on the rear of the lot, of no greater height and no wider than the building now standing and facing Kedzie Avenue, can cause any substantial damage to the general character of Kedzie Avenue at this point. Nor is it clear how the properties on Sawyer Avenue, separated by an alley and in many cases, no doubt, by garages at the rear of the premises, would be harmed by the proposed addition to plaintiff's factory.

Plaintiff purchased its property in reliance upon the commercial classification made by the zoning ordinance and, prior to December 3, 1942, put it to a permitted use. In the absence of compelling reasons of public welfare, it is entitled to the protection of the law against an unreasonable change in the zoning ordinance and further restrictions on the use of its property. The power of a city council to amend a zoning ordinance is not unfettered and can be exercised only when the public good demands or requires that the amendment be made. Where a general zoning ordinance has, in accordance with the general custom, classified property as commercial or industrial, as here,

a subsequent amendment rezoning the property for residential use merely because certain parties so desire is unreasonable and arbitrary and invades property rights of persons who have purchased property in the district in reliance on the general ordinance prior to the amendment. (*Kennedy* v. *City of Evanston*, 348 Ill. 426; *Phipps* v. *City of Chicago*, 339 Ill. 315.) The drastic character of the change in the zoning ordinance appears from the fact that the intervening zoning purposes, namely, business, specialty shop, apartment house and group house were hurdled in one amendment by designating the use of the district of the greater part of Kedzie Avenue between Foster and Bryn Mawr Avenues as duplex residence instead of commercial. The record contains no direct evidence explaining the change in use. By the amended ordinance, plaintiff's existing building became a lawful nonconforming use and any enlargement of the building was prohibited. Under the circumstances, this, for all practical purposes, rendered the building relatively, if not completely, useless and destroyed in large, if not complete, measure its market value. In determining whether the invasion of property rights by a zoning ordinance is unreasonable and confiscatory, the degree in which the values incident to the property are diminished by the restrictions of the ordinance must always be considered in connection with the facts in the particular case. *Taylor* v. *Village of Glencoe*, 372 Ill. 507; *Reschke* v. *Village of Winnetka*, 363 Ill. 478; *Ehrlich* v. *Village of Wilmette*, 361 Ill. 213; *Forbes* v. *Hubbard*, 348 Ill. 166; *State Bank and Trust Co*. v. *Village of Wilmette*, 358 Ill. 311.

Construing the defendants' evidence most favorably to them, the testimony of their witnesses is to the effect that a small number of residents of a nearby residential street were opposed to the construction of the addition to plaintiff's building. To accept the argument that because the neighborhood west of Kedzie Avenue may be generally

characterized as residential and a small college and a public park are located to the south, Kedzie Avenue between Foster Avenue and Bryn Mawr Avenue should be zoned as duplex residence, so far as plaintiff's property is concerned, "would require the court," as we recently observed, "to ignore completely the nature of the property adjacent to that of the plaintiff and to fix its potential best use, not by the use to which the adjacent property is devoted, but by the use being made of other property considerably removed from it." (*2700 Irving Park Bldg Corp.* v. *City of Chicago,* 395 Ill. 138.) The evidence discloses that plaintiff built a structure of a commercial type in reliance upon the zoning ordinance. As pointedly said in *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, "Neither the city council nor the legislature is authorized, under the power of the constitution, to take away or limit the appellant's right to make any use of the property which was lawful at the time it acquired it, except in such ways as may be necessary for the public health, comfort, safety or welfare." In the present case, no reasonable connection obtains between the rezoning of plaintiff's property from commercial to duplex residence and the public health, safety, morals and general welfare.

The zoning ordinance of the city of Chicago, as amended on December 3, 1942, insofar as it applies to plaintiff's property, is arbitrary and unreasonable and must fall. The judgment of the superior court of Cook County is therefore reversed and the cause remanded, with directions to enter a judgment awarding plaintiff the relief sought by its petition for a writ of *mandamus.*

*Reversed and remanded, with directions.*