(No. 30877.—

ZEDRICK T. BRADEN *et al.*, Appellants, *vs.* SAM MUCH *et al.*, Appellees.

*Opinion filed May 19, 1949—Rehearing denied September 19, 1949.*

BRADEN, HALL, BARNES & MOSS, and C. FRANCIS STRADFORD, both of Chicago, for appellants.

RUDNICK & WOLFE, and BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, MAURICE J. NATHANSON, and SYDNEY R. DREBIN, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellants filed a complaint in equity in the superior court of Cook County to restrain appellee the city of Chicago from proceeding under an amendatory ordinance enacted on March 14, 1946, rezoning certain property in the city of Chicago from an apartment house district to a specialty shop district, and to compel appellee Sam Much to remove from his premises a building erected thereon. The trial court sustained appellees' objections to the report of the master in chancery and dismissed the complaint for want of equity. As the trial court has certified that the validity of the ordinance is involved, this matter comes to us on a direct appeal.

Appellants allege in their amended complaint that they are property owners on East Forty-fifth Place in the City of Chicago, and that on April 5, 1923, the Chicago zoning ordinance made the entire district an apartment house district. On March 14, 1946, the city council passed an ordinance changing the area bounded by East Forty-fifth Street, the alley next east of South Parkway, East Forty-fifth Place, and South Parkway, from an apartment house district to a specialty shop district.

Appellants further allege that they are property owners in the district, and purchased their homes after the passage of the 1923 ordinance; that the said amendatory ordinance was not passed in conformity with the statute, in that no public hearing was held before the board of appeals pursuant to notice, and no report of the findings of fact by the board was made; that the ordinance as amended is unreasonable, arbitrary and unjust, and was not passed with a view to maintaining, improving or protecting the safety, health, morals or general welfare of the people; and that it contravenes section 2 of article II of the State constitution and the fourteenth amendment of the Federal constitution. They further allege that appellee Sam Much is constructing a building to be used for commercial pur-

poses on the property owned by him. Appellees answered by way of denial and alleged that the property was not to be used for commercial purposes, but for shops and specialties, in accordance with the zoning ordinance.

The evidence discloses that the amendatory ordinance of March 14, 1946, was introduced on January 16, 1946, upon a petition signed by property owners, dated January 2, 1946, and referred to the committee on buildings and zoning; that the ordinance was set for public hearing to be held February 21, 1946, at 10:30 A.M., in room 203 of the city hall building in the city of Chicago; that notice by publication was made in the Chicago Journal of Commerce of said public hearing, and that a meeting was actually held by the committee pursuant to the notice, after which the committee, by its chairman, reported that the ordinance providing for the amendment be recommended for passage by the city council; that the ordinance was ordered deferred and published by the city council at a meeting held February 28, 1946; that the ordinance was passed on March 14, 1946, and published in the Chicago Journal of Commerce on April 10, 1946.

The evidence further indicates that, in addition to giving the notice required by statute, (Ill. Rev. Stat. 1945, chap. 24, par. 73-8,) and by the Chicago zoning ordinance, it had been the custom in the city of Chicago for investigators to give actual notice to the property owners affected by amendments to the zoning ordinances by delivering to them copies of the notice, or by putting same in the mailboxes on the property. The investigator in this case testified that he had followed the custom in this respect, but appellants testified that they had never received a copy of the notice.

The property of appellee Much is located on the northeast corner of the intersection of South Parkway and Forty-fifth Place. It has a frontage on South Parkway of 75 feet and on Forty-fifth Place of 150 feet. The building

was so constructed that the front of the same appears clearly to be on South Parkway which is a main arterial thoroughfare leading into Washington Park from Thirty-second Street. The properties of the several appellants are located on both sides of Forty-fifth Place, east of South Parkway, and between it and Evans Avenue. None of the property owned by any of the appellants is within the area that is rezoned by the amendatory ordinance.

Immediately north of Much's property, on South Parkway, is a 3-flat building, in the basement of which is a beauty shop. On the southeast corner of Forty-fifth Street and South Parkway is a 6-flat building in which is located a drugstore, a flower store and a cleaning shop. On the northeast corner of South Parkway and Forty-fifth Street, one block north of his property, is the Metropolitan Funeral System Building which houses a chapel and funeral parlor and a ballroom. At the intersection of Forty-third Street and South Parkway, on both sides of the street, are many business places, drugstores and doctors' and lawyers' offices. Likewise, south of the property, between Forty-sixth Street and Forty-seventh Street, both sides of South Parkway are zoned for business and contain many business establishments. Forty-fifth Place, east of South Parkway, contains numerous apartment buildings, including those owned by the several appellants and is, generally speaking, a quiet residential neighborhood, although there is a grocery store located in that neighborhood directly across the street from the properties owned by appellants Braden and Trammel.

Expert witnesses called on behalf of appellants testified that the effect of the building constructed by appellee Much would depreciate the value of the properties in the area from 15 per cent to 25 or 35 percent. However, upon cross-examination, one of them admitted that the value of his property zoned for specialty shops would be about $170 to $175 per front foot, whereas, if zoned exclusively for apartment uses it would have a value of but $100 per front

foot. Another testified that the value of the Much property for apartments would be $200 per foot for the first 25 feet and $100 per foot for the balance, and that if zoned for specialty shops the value would not be more than $250 per front foot.

Witnesses for appellees testified that the highest and best use of Much's property was a specialty-shop use, and that there is no demand for vacant property on South Parkway between Forty-fourth Street and Forty-seventh Street, for apartment or residential purposes. The chief draftsman in the county assessor's office testified that for tax purposes the property on South Parkway is valued at $60 a front foot, while the property on Forty-fifth Place is valued at $25 a front foot. Appellee Sam Much testified that he secured a permit from the city of Chicago to erect a building, consisting of three stores, on the property, and that the cost of construction was $49,000.

The master found in his report that appellants were influenced in purchasing their property by the fact that the area was zoned for apartment or residential use; that there was no evidence that the change was made for the public good; that appellants did not know of the proposal to amend, or of the amendment to the zoning ordinance; that the only notice given was by publication in the Chicago Journal of Commerce; that there was no evidence of a public hearing before the passage of the ordinace, and that the equities of the case were with appellants and against appellees. He recommended that a decree should be entered in favor of appellants in accordance with his findings and conclusions granting the prayer of the complaint.

The chancellor, in sustaining the objections of appellees to the master's report, found that the action of the city council in passing the amendatory ordinance was not arbitrary and that it acted wholly and absolutely within its province under the law; that the requisite notice prescribed by section 73-8 of the Revised Cities and Villages Act

(Ill. Rev. Stat. 1945, chap. 24, par. 73-8,) for an amendatory ordinance was given, and that, in addition thereto, notice was given in accordance with the customs of the city of Chicago by placing a copy of the notice in the mailbox of each of the property owners in the area to be affected, and that a public hearing was held pursuant to the notice by the committee on buildings and zoning.

We have previously held that a complaint in equity, praying for general equitable relief and an injunction, is a proper remedy to test the validity of a zoning ordinance. *2700 Irving Park Bldg. Corp.* v. *City of Chicago,* 395 Ill. 138; *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.

Section 73-8 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1945, chap. 24, par. 73-8,) provided as follows: "The regulations imposed and the districts created under the authority of this article may be amended from time to time by ordinance after the ordinance establishing them has gone into effect, but no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities. At least fifteen days' notice of the time and place of the hearing shall be published in the official paper of, or in a paper of general circulation in the municipality."

Appellants contend that there was no public hearing. We have previously defined the words "public hearing" before any tribunal or body, by the accepted definitions of lexicographers and courts, to mean the right to appear and give evidence and also the right to hear and examine the witnesses whose testimony is presented by opposing parties. (*Farmers' Elevator Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 266 Ill. 567, 573.) The evidence shows that the committee on buildings and zoning, to whom the city council referred the ordinance for public hearing, met at the time and place provided for in the notice. The fact that none of the parties hereto appeared at that time and

place to give evidence, or to hear and examine the witnesses whose testimony might have been presented by opposing parties, makes the meeting no less a public hearing. Nor are the parties excused from appearing at that time by virtue of the fact that they did not read the particular newspaper in which the notice was given. The Chicago Journal of Commerce is a newspaper published within the municipality and the requirements of the statute were complied with by the publication in that newspaper. At that hearing the committee recommended the passage of the amendatory ordinance, and later its chairman made that recommendation in his report to the city council.

Appellants further contend that there could be no public hearing unless notice was given of the time and place to the parties in accordance with the customs of the city of Chicago, by placing copies of the notice in the mailboxes of property owners adjacent to and abutting the area to be zoned. The city called a witness who testified that he was employed as an investigator for the committee on buildings and zoning and that he notified the people of that area of the hearing by leaving a copy of the notice, with the description of the area to be rezoned and the date and time of the hearing, either with the janitor, or, if he could not find a janitor, by putting it over the mailbox of each individual house in the entire area. This testimony was not rebutted except by an attempt to impeach the witness because of his hazy recollection of the persons whom he served, and by the denials of each of the appellants that they had received a copy of the notice. We are therefore forced to the conclusion of the chancellor that the custom of giving notice, as established by the city council, was complied with in this case.

It has long been established that municipalities may adopt zoning ordinances as an exercise of their police power, and may thereby impose a reasonable restraint

upon the use of private property. (*Anderman* v. *City of Chicago*, 379 Ill. 236; *Johnson* v. *Village of Villa Park*, 370 Ill. 272.) The ordinance must have a real substantial relation to the public health, safety, morals or general welfare. (*Western Theological Seminary* v. *City of Evanston*, 325 Ill. 511.) Whether the means employed bear any real substantial relation to the public health, comfort, safety or welfare, or are essentially arbitrary or unreasonable, is a question subject to judicial review. *Offner Electronics, Inc.* v. *Gerhardt*, 398 Ill. 265.

In ascertaining whether a particular zoning ordinance is in the interest of the public welfare, each case must be determined upon its own peculiar facts. (*Johnson* v. *Village of Villa Park*, 370 Ill. 272.) The extent to which property values are diminished by the provisions of the zoning ordinance must be given consideration. (*Offner Electronics, Inc.* v. *Gerhardt*, 398 Ill. 265.) The character of the neighborhood and the use to which nearby property is put may also be taken into consideration. (*Forbes* v. *Hubbard*, 348 Ill. 166.) If the gain to the public by the ordinance is small when compared to the hardship imposed upon the individual property owner by the restrictions of the zoning ordinance, no valid basis for the exercise of the police power exists. The element of value is not controlling, but is proper to be considered and may be persuasive in passing upon the validity of the ordinance. *Quilici* v. *Village of Mt. Prospect*, 399 Ill. 418; *Metropolitan Life Ins. Co.* v. *City of Chicago*, 402 Ill. 581.

When the foregoing well-known principles applicable to zoning ordinances are applied to the facts in the instant case, we find that the area in which appellee's property is located is one which is fast becoming a specialty-shop district. South Parkway, both to the north and to the south of the property, is an arterial thoroughfare, with business enterprises interspersed among apartment and res-

idential properties fronting upon it. It is difficult to evaluate the ratio between the depreciation in value of appellants' property by the amendatory ordinance, as compared with the appreciation of appellee's property and other property located in the rezoned area. The record discloses that other property owners lying within the area joined with the appellee in seeking the amendment to the ordinance. There is apparently little demand for property for residential purposes along South Parkway. The highest and best use to which property located in that area can be put seems to be for specialty-shop purposes; and, likewise, the evidence indicates that the value of the property in the area which has been rezoned is greater than the value of the property adjoining thereto.

We are therefore of the opinion that the city council did not act in an arbitrary or unreasonable manner in passing its amendatory ordinance. The judgment of a legislative authority will not be disturbed merely because the court, if it were establishing zoning districts or making variations therein, would not have done the same thing the legislative body did. The rule is that when the question of reasonableness is fairly debatable, courts will not interfere with the legislative judgment. *Avery* v. *Village of La-Grange,* 381 Ill. 432; *Burkholder* v. *City of Sterling,* 381 Ill. 564; *Zadworny* v. *City of Chicago,* 380 Ill. 470.

Nor can we concur with the position of appellants that the amendatory ordinance would make their property worthless, and is therefore confiscatory. Granting that their property may be depreciated to a certain extent by the introduction of specialty shops in that vicinity, it is not the amendatory ordinance of 1946, alone, that has brought that condition about. The fact is that the vicinity has, for some years, by normal expansion and otherwise, become more and more commercial. The zoning of streets lying along the edges of residential districts, for business and commercial purposes, is a recognized method of zoning.

(*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321.) The situation is somewhat analogous to that set forth in *Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265, in which we said: "Plaintiff's property is not characterized by the residential area to the west of it on North Sawyer Avenue but, instead, by the business district on Kedzie Avenue of which it is a component part." The converse of the situation is true here. Appellee's property is not characterized by the residential area to the east of it, in which lies the property belonging to appellants, but rather, by the properties on both sides of it on South Parkway, of which it is a component part.

The position of appellants is, in at least one respect, similar to the position of appellee Much. At the time they purchased their property, it was zoned for residential and apartment purposes, and they had reason to rely upon the rule of law that it would not be changed, unless for the public good. On the other hand, at the time that Much applied for a building permit for the construction of his building, the area was zoned for specialty-shop purposes, and he had reason to rely upon the same rule of law. Since the city council, in passing the amendatory ordinance, found that it was for the public good, and since we have found nothing in the record which invalidates the ordinance, the position of appellee Much must prevail over that of appellants.

A careful review of the entire record discloses that the decree of the superior court of Cook County, dismissing appellants' complaint for want of equity, was correct and it is affirmed.

*Decree affirmed.*