(No. 33988.—

CLARENCE REGNER *et al.,* Appellants, *vs.* THE COUNTY OF McHENRY *et al.,* Appellees.

*Opinion filed November 26, 1956.*

578

RICHARD F. BABCOCK, of Chicago, and WILLIAM M. CARROLL, JR., of Woodstock, for appellants.

DON A. WICKS, State's Attorney, of Woodstock, (C. RUSSELL ALLEN, of counsel,) for appellees.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

Clarence and Estelle Regner brought suit in the circuit court of McHenry County, praying for an injunction to restrain the county and its zoning enforcing officer from enforcing a zoning ordinance against their property. The court upheld the validity of the ordinance, and dismissed the complaint for want of equity. Plaintiffs appeal directly to this court on the ground that a constitutional question is involved.

As a nonconforming use, the plaintiffs presently operate a fishing resort, where boats are leased to fishermen in a residential area on the east shore of Pistakee Bay. The bay is a part of Pistakee Lake, which lies to the north of it. The lake, in turn, is part of a general resort area in north-eastern Illinois commonly known as the "Chain-O-Lakes Region." In 1951 plaintiffs purchased a tract of land, about eleven acres in extent, fronting on the south side of a well-traveled county road a short way off the southern end of the bay. Part of the property abuts on a channel which

flows from the bay under a bridge on the county road, and into a pond or lake known as Mud Lake. Plaintiffs desire to transfer their business to the new location, which apparently is well known as a good fishing spot. In addition to renting rowboats for fishing purposes, they wish to provide accommodations for serving meals and soft drinks to their customers.

The land is located in an unincorporated area zoned as an "F" Farming District. The uses permitted, in addition to farming, include roadside stands offering for sale products produced on the premises; riding stables; race tracks; dog kennels; mining, loading and hauling of sand and gravel; picnic grounds and recreational camps (not including business facilities); polo and other athletic fields; gun clubs; and private or fraternal club houses. The leasing of fishing boats, or the conducting of a fishing resort, not being expressly permitted, is prohibited by the ordinance.

About three and one-half acres of the land in question is slough and lowland, the rest being wooded and rolling. Except for some grazing by cattle among the trees, the property has never been used for farming purposes. Adjoining it to the south and east is a public fee golf course with a clubhouse at which liquor and meals are served to the public. On the west of plaintiffs' property, immediately across the channel, there are about 725 acres of land used for hunting and fishing purposes by a private hunting club known as "Sports Unlimited." At this club alcoholic beverages are sold and fishing boats are maintained for the use of the members in the channel next to plaintiffs' property and south of the bridge on the county road. West of the hunting club, and on the same side of the county road about a half mile from plaintiffs' property, there is a bulk milk distributing station which receives milk in trucks, processes it, and distributes it. A stable advertising horses for sale is located next to the dairy. Seven-tenths of a mile to the east of plaintiffs' property, and across the county road

on the north, there is a gravel and stone crushing plant.

The properties across the road and directly north of plaintiffs' property border on the bay, and are improved with residences of substantial value. These homes face the bay, those nearest to the plaintiffs' property being back from the county road 200 to 300 feet. Although there are about six fishing resorts within the area of the bay, plaintiffs' present operation is the only one for at least a mile and a half in either direction from the property in question. The public now fishes in the channel off the bridge and along the county road near the plaintiffs' proposed new location.

It appears from the plat and testimony in the record, therefore, that the county road separates the properties now used for residential purposes from those presently devoted to golf, hunting, fishing and commercial purposes. The area between the road and the bay is occupied by residences, while the plaintiffs' land is situated across the road and next to the golf course and hunting area. The record indicates that the highest and best use of the property is for recreational purposes, particularly for a fishing resort. The evidence is in conflict, however, on whether neighboring residential properties would be depreciated in value. Plaintiffs argue that their property is characterized by the adjoining uses; and that any loss in residential value which might be caused by commercial operations has already occurred by virtue of such uses already existing in the neighborhood. The defendants, on the other hand, contend that plaintiffs' land is characterized by the residential area across the road and along the shore of the bay, that there is room for a fair difference of opinion concerning the reasonableness of the ordinance as applied to this property; and that under familiar rules of constitutional law the legislative judgment must be sustained.

The issue presented in the trial court and upon this appeal is whether the restriction as applied to plaintiffs'

property bears any rational relation to the public health, safety, morals, or welfare. In determining this issue it is necessary to consider not only the plaintiffs' property itself but also the character of the properties in the immediate neighborhood. It is evident from the record that the land in question is largely unsuited for residential development, and that the uses of surrounding properties are essentially commercial and recreational. A consideration of the uses existing on the same side of the county road, namely golfing, hunting, fishing and commercial activities, conclusively shows them to be of the same general character as that of the resort which plaintiffs propose to establish.

It is true that some distance across the road there are residences, but it does not follow that the residential character of that area should control the use to which plaintiffs' property may be put. The evidence shows that the road is not a mere residential lane, but a well traveled thoroughfare, used by commercial vehicles as well as by hunters, fishermen, golfers and general traffic. It could have been considered the logical boundary line for the purpose of ascertaining the particular area or neighborhood the character of which is relevant in deciding the propriety of the restriction. We think it is clear that the plaintiffs' property is characterized, not by the residential area beyond the road, but by the commercial and recreational area of which it is a component part. See *Offner Electronics, Inc. v.Gerhardt*, 398 Ill. 265, 275.

Granting that the value of the residential properties may be depreciated to some extent by the use of nearby properties for hunting and fishing resorts or commercial establishments, the damage has already occurred by virtue of existing nonresidential uses of that character. In view of such present uses adjacent to and near plaintiffs' property, it is difficult to see how their proposed fishing resort could itself cause substantial damage. In *Taylor* v. *Village of Glencoe*, 372 Ill. 507, certain property zoned for resi-

dential use was virtually surrounded by commercial and industrial uses, although there were residences in the immediate vicinity. In holding the ordinance invalid as it applied to the particular property we observed, with reference to depreciation in value of nearby residential property: "These encroachments have been present for many years and any damage that may be caused by an additional commercial or industrial use is negligible." (See, also, *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321, 335.) Essentially the same situation prevails in the case at bar. It is clear that the use of property cannot be restricted or limited merely because neighboring property owners so desire, or because they think it might protect the value of their residences. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265.) To be a valid exercise of power, a zoning restriction must have some rational connection with the promotion of public health, safety, morals, or welfare. We can see none here. The zoning ordinance of McHenry County, insofar as it applies to plaintiffs' property, is arbitrary and therefore void.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree awarding plaintiffs the relief sought.

*Reversed and remanded, with directions.*