AMERICAN OIL CORPORATION *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF CHICAGO, Defendant-Appellee.

(No. 60060; )

First District (5th Division)—June 13, 1975.

*Rehearing denied July 28, 1975.*

Ronald M. Glink, of Chicago, for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE BARRETT delivered the opinion of the court:

The cause before this court is an action for declaratory judgment and other relief brought by the estate of Dorothy Dalton Hammerstein, owner of the north half of the subject property which is presently improved with a Standard Oil gasoline service station, and American Oil Corporation, the lessee of said station, and owner of the south half of the subject property.

Plaintiffs ask this court to declare the ordinance adopted by the City Council of the City of Chicago, reclassifying the subject property from B4-3 Restricted Service District to R-4 General Residence District under the Chicago Zoning Ordinance, invalid and void. A bench trial was had at which the trial court entered an order in favor of the City, declaring the ordinance valid and constitutional as applied to the subject prop-

erty. Plaintiffs' motion to vacate the judgment was denied, whereupon they filed this appeal.

The subject property located at 7500 north in the City of Chicago and bounded by Birchwood Avenue on the south, Howard Street on the north, Sheridan Road on the east and an alley on the west has had a zoning classification allowing commercial use for more than 30 years prior to its reclassification from a B4-3 to a R-4 General Residence District by the City Council on July 28, 1971.

The American Oil Corporation purchased the south half of the property at the corner of Birchwood and Sheridan Road in 1935, and shortly thereafter erected a gasoline station at that location. This station was operational until 1970, at which time it closed upon the opening of a new American Oil gasoline station on the north half of the property.

The north half of the subject property, owned by the estate of Dorothy Dalton Hammerstein, contained a building used for both commercial and residential purposes until it was razed in 1970. In 1969, the American Oil Corporation, relying on the B4-3 classification of the entire subject property, entered into a lease with Mrs. Hammerstein for the north half of the property for a period of 10 years commencing July 1, 1970, with three 5-year extensions and an option to buy the property at a minimum purchase price of $250,000.

The requisite driveway permits for the new gas station were not issued until the American Oil Corporation assured the then 49th Ward Alderman Paul Wigoda and community residents that another gas station would not be built at the corner of Birchwood and Sheridan Road and that the north half of the subject property containing the new station would be properly designed and landscaped. After having made these assurances in writing to the alderman in 1969, and having obtained his approval, permit applications containing the name and address of the American Oil Corporation were issued for the demolition of both the building on the north half of the property and the old gas station on the south half of the property and for the erection of a new gas station on the north half of the property. The new station was constructed at a cost of $171,000 and opened for business in late 1970.

Shortly after the old gas station was demolished, the American Oil Corporation advertised the sale of the vacant property under the B4-3 classification. A contract was entered into with Arnold Kramer in November, 1971, for the purchase of the property for $180,000, subject to Kramer's consummation of a binding lease with Denny's Restaurant. Kramer testified that at the time of the negotiations with Denny's, he had checked the plat book which showed a B4-3 classification. Though the lease with Denny's failed to materialize, Kramer was able to secure the

International House of Pancakes as a tenant. A new contract for the purchase of the south half of the subject property was then executed. Neither Kramer nor the American Oil Corporation was aware during these negotiations that the city council had rezoned the subject property to a R-4 General Residence classification on July 28, 1971. Only in early 1973, when the International House of Pancakes applied for a building permit, did the parties learn of the zoning change.

Alderman Wigoda, at the beckoning of some area residents, had introduced on May 5, 1971, an ordinance in the city council changing the B4-3 classification to the R-4 General Residence District. Legal notice of the public hearing before the Committee on Building and Zoning was published in the CHICAGO TODAY newspaper on June 11, 1971, at page 67. The notice neither recited the names of the owners of the property, nor did it give the address of the property. The notice did, however, list the streets which bounded the area in question.

As a courtesy to area residents, the Committee caused to be delivered actual notice of the public hearing to property owners within 150 feet in each direction of the subject property. These notices were placed in the respective mailboxes of the residents. No such actual notice was delivered to plaintiffs, American Oil Corporation and the estate of Dorothy Dalton Hammerstein, the owners of the property which was proposed to be rezoned.

Alderman Wigoda, as a member of the Committee on Building and Zoning, was the only witness at the June 29, 1971, hearing to address himself to the rezoning of the subject property. In a meeting which abounded with levity, Alderman Wigoda told the Committee that "the property is now vacant" and that "it has been vacated by Standard Oil." No mention was made of the existence of the recently built gasoline station on the subject property. The matter was taken under advisement without a vote on the merits and the Committee then adjourned *sine die*. No other public hearings were had with respect to the subsequent rezoning of the property.

OPINION

It is plaintiffs' contention that due process of law mandates actual notice and an opportunity to be heard where the adoption of an amendatory zoning ordinance affects plaintiffs' "legally protected interests." At trial, testimony revealed that the rezoning of the subject property from B4-3 to R-4 has had a substantial effect on the value of the property. The gas station has become a nonconforming use, and as such cannot be rebuilt if it is damaged more than 50 percent, and enlargment of the building and structural repairs, which are periodically undertaken by

the American Oil Corporation, are not allowed. The entire property with the R-4 classification was estimated at trial to be depreciated in value by one-half.

Defendant asserts that its compliance with the statutory requirements of notice by publication of the proposed zoning amendment satisfied due process of law requirements. Section 11—13—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—14) provides in part that:

> "* * * no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities. Notice shall be given of the time and place of the hearing, not more than 30 nor less than 15 days before the hearing, by publishing a notice thereof at least once in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality. In municipalities with less than 500 population in which no newspaper is published, publication may be made instead by posting a notice in 3 prominent places within the municipality." Ill. Rev. Stat. 1973, ch. 24, par. 11—13—14.

This court is compelled by the decisions of the United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, and *Schroeder v. City of New York*, 371 U.S. 208, to hold the above statutory requirement constitutionally insufficient under the facts of the case at bar.

The question presented in *Schroeder* was whether the City of New York deprived plaintiff of due process of law by failing to give her adequate notice of the condemnation proceedings affecting the property she owned on the Neversink River in Orange County, New York. The City of New York complied with the statute providing for notice to be published in New York newspapers and handbills to be posted in the vicinity of the real estate. Though notice was posted near plaintiff's property, no such notice was placed on the property itself. Plaintiff filed an equitable action after the statute of limitations had run, complaining that she had never been notified of the condemnation proceedings. The court, finding that plaintiff's name and address could be readily obtained from both deed records and tax rolls, held that the notice given plaintiff did not measure up to the quality of notice which the due process clause requires. Relying on its decision in *Mullane*, the court said that "* * * notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212.

In *Mullane,* statutory notice by newspaper publication was addressed generally to the beneficiaries of a common trust fund. Plaintiffs appeared specifically, claiming that the statutory provisions for notice were inadequate to afford due process under the fourteenth amendment. The court cited numerous cases for the fundamental proposition that notice must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (*Milliken v. Meyer,* 311 U.S. 457; *Grannis v. Ordean,* 234 U.S. 385, *Priest v. Board of Trustees,* 232 U.S. 604.) In holding the statute incompatible with due process of law, the court made a most relevant observation with respect to the instant case:

> "It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. * * * Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper * * * The change of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315.

This court has been asked to apply several Illinois cases which defendant suggests have rejected plaintiffs' contention, that under the facts of this case, due process of law mandates actual notice of a public hearing. The most recent decision brought to our attention is *Village of Riverwoods v. County of Lake,* 94 Ill.App.2d 320, 237 N.E.2d 547. Though the court makes reference to the proposition that actual notice is unnecessary, it fails to reach the constitutional issues raised by plaintiff. Furthermore, the case is inapposite in that it only precludes a zoning board from acting upon property which was not included in the legal notice of the rezoning of adjacent property published in compliance with the statute. Defendant then cites *Bohan v. Village of Riverside,* 9 Ill.2d 561, 138 N.E.2d 487, where it was held that plaintiffs were not entitled to personal notice where the amendment to the zoning regulation added certain permitted uses to the existing B-4 residential classification throughout the Village of Riverside. It is an important distinguishing factor that plaintiff's "legally protected interest" in *Bohan* was not affected by the proceedings in question. The circumstances in that case do not deal with the rezoning of a particular piece of property from a commercial to a residential classification, whose value by that act, has

been drastically reduced. Rather, the Village of Riverside added a particular use to an already existing classification, which in the words of the court did not make the proposed use of the property dissimilar or even more onerous than the presently permitted use.

Defendant also relies on *Braden v. Much*, 403 Ill. 507, 87 N.E.2d 620. We must distinguish *Braden* because there the City of Chicago not only published notice of the zoning hearing, but, as was determined by the chancellor and supreme court, actual notice was, in fact, given to all the property owners affected.

In the case at bar, notice by publication was nothing more than a mere feint since plaintiffs' only notice was buried in the back pages of a newspaper. Under such circumstances the notice was not reasonably calculated to reach those who should have been informed so as to afford them an opportunity to present their objections. (*Milliken v. Meyer*, 311 U.S. 457.) In the instant case, as in *Schroeder v. City of New York*, 371 U.S. 208, the city had plaintiffs' names and addresses available to them since both deed and tax roll records were easily accessible. Moreover, the City of Chicago issued building permits to plaintiffs and an elected representative of the city was in written communication with plaintiff, American Oil Corporation.

Therefore, where as here the names and addresses are actually known to defendant, and legally protected interests of property owners are at stake, due process mandates actual notice to the effected parties.

Based on the views expressed herein, we hold that the plaintiffs' constitutional right to due process was violated and that the ordinance rezoning the subject property is invalid and void. Accordingly, the order of the trial court is reversed. By virtue of this decision we find it unnecessary to consider other issues raised by appellants.

Reversed.

LORENZ and SULLIVAN, JJ., concur.