Docket No. 107429.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

JOSEPH PASSALINO *et al.*, Appellees, v. THE CITY OF ZION,
Appellant.

*Opinion filed December 17, 2009.–Modified upon denial of
rehearing April 22, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the
court, with opinion.

Justices Thomas, Kilbride, Garman, and Karmeier concurred in the
judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justice Burke.

Justice Freeman also dissented upon denial of rehearing, with
opinion, joined by Justices Garman and Burke.

OPINION

Joseph Passalino and his wife, Marlene (plaintiffs), filed a
declaratory judgment complaint in the circuit court of Lake County
against the City of Zion. Plaintiffs sought the invalidation of a zoning
map amendment that prohibited the use of their land for the
construction of multifamily buildings. Specifically, they claimed that
the City's notification of public hearings by use of newspaper
publication pursuant to section 11–13–2 of the Illinois Municipal
Code (65 ILCS 5/11–13–2 (West 1996)) was not sufficient notice to
satisfy the due process requirements of the federal constitution. In

granting plaintiffs' motion for summary judgment, the circuit court of Lake County found section 11–13–2 of the Municipal Code unconstitutional as applied to plaintiffs and also declared the amendment void as to plaintiffs' parcel. The City appealed. 210 Ill. 2d R. 302(a). For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

This matter arises out of the zoning of a certain parcel of vacant real property located within the City. In 1971, the property's previous owner negotiated with the City to prepare the property for future development of eight single-family homes and 142 multiple-family units. On December 7, 1971, the Zion city council passed ordinance No. 71–O–61, which assigned zoning classifications to the property of "R8," for the development of single-family homes, and "R2," for the development of multiple-family dwellings.

In 1972, plaintiffs, as beneficiaries of a land trust, acquired the property. According to the complaint, when the subject property was purchased, extra monies were paid to the previous owner, which were then immediately paid to the City for the extension of Zion's sanitary sewer main and its connection to all of the proposed 142 multifamily units. This consisted of two payments that together totaled $45,000. During 1972 and 1973, Joseph Passalino constructed the 8 single-family homes and 48 of the planned 142 multifamily units. By 1978, Passalino had sold all of the developed property.

In March 1996, the City decided to adopt a new zoning ordinance for the entire municipality. The City proceeded consistently with the provisions in section 11–13–2 the Illinois Municipal Code (65 ILCS 5/11–13–2 (West 1996)). This section provides:

> "The corporate authorities in each municipality which desires to exercise the powers conferred by this Division 13, or who have exercised such power and desire to adopt a new ordinance, shall provide for a zoning commission with the duty to recommend the boundaries of districts and appropriate regulations to be enforced therein. The commission shall be appointed by the mayor or president, subject to confirmation by the corporate authorities. The commission shall prepare a

tentative report and a proposed zoning ordinance for the entire municipality. After the preparation of such a tentative report and ordinance, the commission shall hold a hearing thereon and shall afford persons interested an opportunity to be heard. Notice of the hearing shall be published at least once, not more than 30 nor less than 15 days before the hearing, in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers published in the county in which the municipality is located and having a general circulation within the municipality. The notice shall state the time and place of the hearing and the place where copies of the proposed ordinance will be accessible for examination by interested persons. The hearing may be adjourned from time to time.

Within 30 days after the final adjournment of the hearing the commission shall make a final report and submit a proposed ordinance for the entire municipality to the corporate authorities. The corporate authorities may enact the ordinance with or without change, or may refer it back to the commission for further consideration. The zoning commission shall cease to exist upon the adoption of a zoning ordinance for the entire municipality." 65 ILCS 5/11–13–2 (West 1996).

Pursuant to the Municipal Code, an appointed planning commission reviewed the zoning map for the City and prepared a tentative report and a proposed ordinance. This report was known as the "Zion Comprehensive 2010 Plan." The commission provided notice of hearing in the March 19, 1996, edition of the Bargaineer, a "free community newspaper" which is self-described as providing "many local deals and a smattering of general interest news." On page 10 of the paper, underneath an advertisement for Oneida Casino Bingo, the four-inch by four-inch notice stated:

"PUBLIC HEARING

City of Zion zoning

Comprehensive Zoning Amendment

Zion Zoning Commission will hold two public hearings:

Wednesday, April 3, 1996 at 7:00 P.M.

and

Friday, April 12, 1996 at 7:00 P.M.

Both Public Hearings will be held in the Zion

City Council Chambers at 2828 Sheridan Road

A copy of the recently adopted 2010 Comprehensive Plan update and proposed comprehensive zoning amendment will be available for review at City Hall Monday through Friday between the hours of 8:00 a.m. and 5:00 p.m."

An identical second notice was published on March 14, 1996, in the Zion-Benton News on page 27 underneath a scuba diving advertisement.

The planning commission held two meetings to discuss the ordinance. According to the minutes of both meetings, no member of the public commented or objected. The commission recommended to the mayor and the city council that the zoning map amendment be adopted as presented in the tentative report. In June 1996, the City adopted ordinance No. 96–O–41, entitled "Amending Chapter 102 Zoning of the Municipal Code of the City of Zion, Illinois, of 1992 Comprehensive Rezoning." Eighty-five parcels in the City were affected, including the subject property. The property was rezoned from R2 multifamily to R8 single family.

In 2001, Joseph Passalino sought to develop his remaining property with multifamily units. To his surprise, his plans for multifamily dwellings were rebuffed by the City because of the zoning change. According to his affidavit found in the record, Passalino never received any notice via United States mail or by any other delivery method. Lake County's property tax records for 1995 identify the legal owner as the land trust and also contain a mailing address. Also according to the affidavit, plaintiffs have regularly received assessment notices and real property tax bills for the property in each year since 1973. They have been residents of Lake Forest since 1963.

In 2007, plaintiffs filed the current second-amended complaint for declaratory relief in the circuit court of Lake County. The plaintiffs requested, *inter alia*, that the court declare the subject property legally zoned and classified within the R2 multifamily district of the Zion zoning ordinance and that the court declare Zion ordinance

No. 96–O–41 void.[1] After defendants filed an answer, the plaintiffs filed a motion for summary judgment. Plaintiffs argued that due process required actual notice to them of the proposed zoning map amendment. Alternatively, plaintiffs argued that even if the circuit court found that published notice was sufficient, the notice in this case was defective.

The circuit court granted plaintiffs' motion for summary judgment. The circuit court found that the notice provision of section 11–13–2 (65 ILCS 5/11–13–2 (West 1996)) is unconstitutional as applied to the facts of this case. The court held that plaintiffs were entitled to receive actual notice from the City in 1996 of the proposed zoning map amendment that would rezone his property or the published notice should have contained an itemization or identification of plaintiffs' affected property. It also found that plaintiffs were specifically deprived of their due process rights in the 1996 rezoning of his property. Next, it held the rezoning of plaintiffs' property from R2 to R8 is void. The trial court entered summary judgment and declared that plaintiffs' real property as described in the second-amended complaint as properly zoned in the R2 district in Zion, Illinois. The City appealed directly to this court. 210 Ill. 2d R. 302(a).

## ANALYSIS

Summary judgment is appropriate where the pleadings, depositions and admissions together with any affidavits show there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2006). All cases involving summary judgment are reviewed *de novo*. *Poindexter v. State of Illinois*, 229 Ill. 2d 194, 210 (2008). At issue here is the legal question of the process due the plaintiffs. Procedural due process is founded upon the notion that prior to a deprivation of life, liberty or property, a party is entitled to " 'notice and opportunity for [a] hearing appropriate to the nature of the case.' " *Jones v. Flowers*, 547

---

[1]The second amended complaint made no claim of a "vested right" in the continuation of the prior ordinance. This complaint also did not challenge either the facial validity of the Municipal Code or the validity of the 1996 ordinance, facial or as-applied.

U.S. 220, 223, 164 L. Ed. 2d 415, 423, 126 S. Ct. 1708, 1712 (2006), quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 94 L. Ed. 865, 873, 70 S. Ct. 652, 656-57 (1950). In their briefs, the parties do not dispute that, due to the actions of the City, the plaintiffs were persons interested in the hearings such that they were entitled to notice under the Municipal Code. See 65 ILCS 5/11–13–2 (West 1996). Plaintiffs' entitlement to procedural due process arises out of plaintiffs' property interest, which is affected by the zoning map amendment. See *Chicago Title & Trust Co. v. Village of Palatine*, 22 Ill. App. 2d 264, 269 (1959) ("persons interested [in zoning changes must be] afforded an opportunity to be heard"); *American Oil Corp. v. City of Chicago*, 29 Ill. App. 3d 988, 991 (1975) (finding property owner was denied procedural due process because of city's failure to notify of downzoning that directly affected plaintiff's property); *cf. Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991) (finding procedural due process claim arose where published notice of general zoning ordinance change lacked any notice to property owner that his property would be downzoned at city council meeting); *Harris v. County of Riverside*, 904 F.2d 497 (9th Cir. 1990) (procedural due process claim arose when, without notice to plaintiff, county passed general zoning ordinance that rezoned plaintiff's property); but see *Bohan v. Village of Riverside*, 9 Ill. 2d 561, 566 (1956) (owners of property adjacent to rezoned property were not denied procedural due process because of lack of personal notice); *Wells v. Village of Libertyville,* 153 Ill. App. 3d 361, 368 (1987) (same). Accordingly, due process requires that plaintiffs be apprised of the pendency of the zoning map amendment and afforded the opportunity to present their objections. *Jones v. Flowers*, 547 U.S. at 226, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713-14, citing *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. Therefore, the only question which the parties have presented to this court is whether the City's published notice afforded the plaintiffs an adequate opportunity to be heard.

Plaintiffs argue that their due process rights were violated because they did not have actual notice of the meeting. Plaintiffs cite the landmark case of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), and its progeny. The City asserts that its notice by publication in the Bargaineer and the

Zion-Benton News was adequate to satisfy due process, because it strictly complied with the minimum requirements pertaining to rezoning of an entire municipality, as provided in section 11–13–2 of the Municipal Code (65 ILCS 5/11–13–2 (West 1996)). While we join the City in deferring to the language of our legislature, our deference does not extend beyond the point at which the language of the statute is compatible with the United States Constitution. In accordance with familiar constitutional principles, we conclude that the statute is unconstitutional as applied to the facts and the type of zoning amendment at issue in this case.

We find this case to be a textbook application the United States Supreme Court's constitutional analysis. In *Mullane*, the only notice given to certain beneficiaries of a trust was by publication in a local newspaper in strict compliance with the minimum requirements of the New York Banking Law. *Mullane*, 339 U.S. at 309, 94 L. Ed. at 871, 70 S. Ct. at 655. Appellants objected to notice and argued that the statutory provisions for notice to beneficiaries were inadequate to afford due process under the fourteenth amendment. In deciding for appellants, the United States Supreme Court's decision relied on the following classic maxim of law:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. ***
>
> *** [W]hen notice is a person's due, process which is a mere gesture is not due process." *Mullane*, 339 U.S. at 314-15, 94 L. Ed. at 873-74, 70 S. Ct. at 657.

Accordingly, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 657. The lengths any party must go to achieve proper notice need not be unreasonable. Underlying any assessment of the "practicalities and peculiarities" of any case requires balancing the "interest of the State" against the "individual interest sought to be protected." *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.

More specifically, the *Mullane* Court held that notice by publication is not sufficient with respect to an individual whose name and address are known and easily ascertainable. *Mullane*, 339 U.S. at 320, 94 L. Ed. at 876, 70 S. Ct. at 660. Hence, notice by publication was inadequate "not because in fact it fails to reach everyone, but because *** it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Mullane*, 339 U.S. at 319, 94 L. Ed. at 876, 70 S. Ct. at 660. The Court observed that " '[c]hance alone' " brings a person's attention to " 'an advertisement in small type inserted in the back pages of a newspaper,' " and that notice by publication is adequate only where " 'it is not reasonably possible or practicable to give more adequate warning.' " *Jones v. Flowers*, 547 U.S. at 237, 164 L. Ed. 2d at 433, 126 S. Ct. at 1720, quoting *Mullane*, 339 U.S. at 315, 317, 94 L. Ed. at 874, 875, 70 S. Ct. at 658, 658.

Here, under all of the circumstances, we do not believe that service was reasonably calculated to inform the plaintiffs of the pendency of the meeting scheduled to address the proposed zoning map amendment. The City has never rebutted the general assertion that the address of the trustee of the land trust could have been easily ascertained and that the land trustee could have been easily informed, enabling the trustee to pass the information along to the plaintiffs. Indeed, tax assessments had been sent to the land trustee and ultimately received by the plaintiffs, as beneficiaries of the land trust, since 1973. Instead of taking advantage of tax records, however, the City provided notice only with four-inch by four-inch notices published at page 10 of the Bargaineer and page 27 of the Zion-Benton News. As our appellate court has stated, "notice by publication is not enough in cases where a person's legally protected interests are directly affected by the legal proceedings and the person's name and address are known or easily discerned." See *Wells*, 153 Ill. App. 3d at 367, citing *American Oil*, 29 Ill. App. 3d at 991 (citing *Schroeder v. City of New York*, 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279 (1962), and *Mullane*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652).

Among the reasonable actions that the City could have taken was to review the records of the Lake County collector and then mail notice to the taxpayers of record of the 85 properties affected by the

zoning map amendment. As defense counsel agreed at oral argument, this would have cost approximately $30. As such, in this instance it is not unreasonable to mail notice to the taxpayers of record of the affected parcels, and it would not "place impossible or impractical obstacles" (*Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657) on the City's zoning efforts. Indeed, the City itself imposes a similar burden on certain objectors to zoning and also those seeking local siting approval. Zion City Ordinance No. 85–14–2.

Similar to the argument advanced by the trust in *Mullane*, the City's primary argument is that it strictly complied with the minimum requirements of the Municipal Code. Like the Court in *Mullane*, however, we hold that minimum compliance with this law is still incompatible with constitutional requirements under these circumstances. Here, publication notice pursuant to section 11–13–2 (65 ILCS 5/11–13–2 (West 1996)) was not sufficient to satisfy due process requirements as applied to the facts of this zoning map amendment case.

The City's reliance on *Williams v. Village of Schiller Park*, 9 Ill. 2d 596 (1956), is misplaced. In *Williams*, we stated that where there is a reasonable ground for difference of opinion as to the basis of a zoning classification, the legislative judgment expressed in the ordinance will be sustained. *Williams*, 9 Ill. 2d at 598. We therefore held that the single-family residential character of the property in that case would not be upset because of some commercial use near or even adjoining such property. As to the procedural validity of the Schiller Park zoning ordinance, we held that although the area was originally zoned residential by a village, by a general ordinance imposed without notice and hearing required by statute, the area was subsequently rezoned with a new ordinance with a proper notice. *Williams*, 9 Ill. 2d at 598-99. Here, unlike *Williams*, there is no challenge to the reasonableness of the zoning classification and there has been no subsequent ordinance passed with proper notice and hearing. Therefore, we find *Williams* to be inapposite.

Thus, weighing the interests of the City and the plaintiffs, it is the judgment of this court that the means employed by the City were not reasonably calculated to inform the plaintiffs such that they received an opportunity to object at the meeting. On balance, plaintiffs' ownership interest entitled them to a notice with more likelihood of

success than "chance alone," particularly where there is little burden upon the City. Because the notification procedures used by the City in this case were not "reasonably calculated, under all the circumstances, to apprise [these] interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Mullane*, 339 U.S. at 314, 94 L. Ed. 2d at 873, 70 S. Ct. at 657), their procedural due process rights deriving from the fifth and fourteenth amendments to the United States Constitution were violated. Thus, section 11–13–2 of the Municipal Code (65 ILCS 5/11–13–2 (West 1996)) is unconstitutional as applied to the facts of this case.

To clarify for the bench and bar, our holding does not require actual notice to these plaintiffs, as beneficiaries of an Illinois land trust, but only efforts "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 94 L. Ed. 2d at 874, 70 S. Ct. at 657. Here, reasonable efforts may have included sending notice to the land trustee as the taxpayer of record, who then could have forwarded the notice to the plaintiffs. Under the instant circumstances, a more extensive search to unearth the identities and addresses of the beneficiaries of the land trust so the City could directly provide them with actual notice is not constitutionally required. This court's holding also does not affect the continuing validity of the use of publication notice under section 11–13–2 of the Municipal Code (65 ILCS 5/11–13–1 through 11–13–20 (West 1996)). Rather, we only hold that, in this zoning map amendment case, notice was insufficient such that ordinance No. 96–O–71 was invalid in its application to plaintiff's property and that the property can currently be lawfully used in accordance with the previous zoning ordinance.

CONCLUSION

For all the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

In holding that plaintiffs were entitled to actual notice from the City of Zion (City), today's opinion raises more questions than it resolves. First, and perhaps foremost, what is the nature of the property interests that drive the court's analysis? Relatedly, given this court's precedent regarding zoning, why, on balance, does notice by publication fail to sufficiently protect plaintiffs' interests in this case? And what exactly is the rule of today's decision? Because the majority opinion does not adequately address these general concerns, I cannot join in it and must respectfully dissent.

Nature of the Interests Involved

It is difficult to ascertain the exact nature of plaintiffs' property interests without a detailed recitation of the facts, many of which are not included in the majority's decision. The dispute in this case arises from the zoning classification of certain vacant parcels of property located in the City. In December 1971, the City passed an ordinance which rezoned these parcels as multifamily residential. This rezoning was done at the behest of the owner at that time, who had requested and received from the City approval to construct 142 multiple family units on the property. Construction, however, was never undertaken. In 1972, the owner began discussions with plaintiffs about the possible sale of the property. At that time, plaintiffs believed that the only way the subject property could be developed was to have a sanitary sewer line extended to it. Plaintiffs also knew that the City had plans to extend its sanitary sewer main to serve the subject property. Plaintiffs paid $35,000 to the previous owner of the property in order to have the City provide for the extension of the City's sanitary sewer main to the property and to have all 142 multifamily units connected to it. In November 1972, plaintiffs paid, again through the previous owner, $10,000 to the City as part of an agreement for sanitary sewer connections for all of the approved 142 multifamily units. On the same date, plaintiffs acquired the property as beneficiaries of a land trust.[2]

_____

[2]According to documents submitted in support of plaintiffs' motion for summary judgment, at the time of the sale, the Zion State Bank and Trust Company served as trustee for the land trust, which was known as Trust

-11-

Shortly thereafter, the City extended the sanitary sewer so as to be accessible for the development of the subject property. From 1973 through 1974, plaintiffs constructed 8 single-family homes and the first 48 units of multifamily residences on a portion of the subject property. By 1978, plaintiffs had sold all the developed property. To date, plaintiffs' remaining property that had been approved for multifamily residences remains undeveloped.

In 1996, the City undertook a comprehensive rezoning of all the property in the City, including that held by plaintiffs as land trust beneficiaries. After public hearings, the city council passed an ordinance that amended the official zoning map. That amendment affected some 85 parcels throughout the City, including the subject property, by rezoning them from a multifamily residential classification to a single-family residential classification.

These facts lead to several observations that are important to the proper resolution of this case. First, plaintiffs are the beneficiaries of a land trust. The Illinois land trust is "a unique creation of the Illinois bar," which over the years has "served as a useful vehicle in real estate transactions for maintaining secrecy of ownership and allowing ease of transfer." *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 487 (1979). Generally, once property is placed in a land trust, the owner's interest in the real property changes to a personal property interest in the trust. *Chicago Title & Trust*, 75 Ill. 2d at 488. As such, legal and equitable title of the property rests with the trustee, including the right to transfer and encumber the property. *Chicago Title & Trust*, 75 Ill. 2d at 488. A beneficiary does not appear as an owner of record, and the trustee must keep beneficiary names confidential. Real Property Services Illinois, Land Trusts §31:72 (1989). Plaintiffs, as beneficiaries, retain other ownership rights such as the right of possession and the right of the use and enjoyment of the property. The trustee will forward bills for taxes or assessments to the beneficiary (Real Property Services Illinois, Land Trusts §31:58 (1989)), who is responsible for their payment (*Chicago Title & Trust*, 75 Ill. 2d at 493). The majority's statement that plaintiffs' name and address could have been easily ascertained (slip op. at 8) is therefore untrue–a title

Number 498.

-12-

search would only disclose that the land was in a trust; such a search would not identify the plaintiffs as beneficiaries. Similarly, a tax records search would disclose the name and address of the trustee. Those documents would not identify the plaintiffs as beneficiaries.[3]

Certainly, any zoning changes to the property would affect the right to the use of the property (how and for what use the property can be improved). *City of Loves Park v. Woodward Governor Co.*, 14 Ill. 2d 623, 625 (1958). Beneficiaries of a land trust would be "persons interested" in the hearings (65 ILCS 5/11–13–2 (West 1996)) and therefore entitled to notice under the Municipal Code. The question, however, is what type of notice is required.

What is considered reasonable notice depends on the outcome of the balance between the state's interest and the individual interest sought to be protected by the fourteenth amendment. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950). Generally, a landowner's right to use of the property does not include the right to the continuation of an existing zoning classification. *Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill. 2d 510, 517 (1978). An exception to the rule will be made " '[w]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance.' " *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 615 (2006), quoting *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove*, 16 Ill. 2d 183, 191 (1959), citing *Fifteen Fifty North State Building Corp. v. City of Chicago*, 15 Ill. 2d 408, 416 (1958). In such cases, the landowner has a vested right in the former zoning classification and will be allowed to complete the construction and use the property for the purpose originally authorized irrespective of the subsequent reclassification.

Since plaintiffs' initial development of multiple-family residences in 1974, the subject property has remained unimproved. Plaintiffs have

---

[3]The tax documents included in the record reveal this to be the case. Plaintiffs' names and address do not appear on those records. The documents indicate the name of the trustee, Chicago Title and Trust Company, and the company's Chicago address.

not alleged that they have received building permits or had even applied for them such that the vested-rights exception to the general rule would have application to this case. I do not understand what it is about plaintiffs' interest in the property that would entitle them to actual notice of the pending zoning changes. Plaintiffs' right to the use of the property does not entitle them to a continuation of a particular zoning classification, in this case the multifamily residential classification. This fact is critical in determining whether constitutionally sufficient notice was given since the answer depends on a balancing of the State's interest and the individual interests sought to be protected.

The majority summarily concludes that plaintiffs' entitlement to due process "arises out of plaintiffs' property interest which is affected by the zoning change" (slip op. at 6), but this conclusion does not rest on any analysis of the nature of the interest plaintiffs seek to protect in this case. The majority cites a number of cases for this proposition, but even a cursory reading of each provides little help in addressing the question at hand. For example, *Chicago Title & Trust Co. v. Village of Palatine*, 22 Ill. App. 2d 264 (1959), stands for the unremarkable proposition that the public must be given notice of proposed comprehensive zoning plans and that persons interested be given the opportunity to be heard. The public was given notice in this case and interested persons were given the opportunity to be heard. Both *Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), and *Harris v. County of Riverside*, 904 F.2d 497 (9th Cir. 1990), simply hold that once published notice is given of a zoning change, new notice must be given if the property is rezoned to a different classification than that published in the notice, a situation that did not occur in this case.

Only one case, *American Oil Corp. v. City of Chicago*, 29 Ill. App. 3d 988 (1975), seems helpful. There, the appellate court held that, because an owner of property had "legally protected interests," actual notice of a proposed zoning change from commercial to residential was constitutionally required. But this was because the City had, prior to the zoning change, issued to the owner building permits for buildings to be erected on the property. *American Oil*, 29 Ill. App. 3d at 990. According to the court, the zoning change rendered the resulting gas station a nonconforming use of the property and had

diminished the value of the property. *American Oil*, 29 Ill. App. 3d at 990-91. *American Oil* simply reinforces the notion that courts will protect the interests of property owners in zoning disputes when vested rights in a particular classification are at play. I take no issue with that. As explained above, however, plaintiffs have not asserted any vested right in the prior classification, a fact which the majority itself notes in its opinion. Slip op. at 4 n.1.

Application of *Mullane*

The majority asserts that the outcome in this case is a "textbook application" of the analysis in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). See slip op. at 7. In *Mullane*, the United States Supreme Court held that a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. The proceeding which triggered the requirement for notice was a judicial action to settle the accounts of a common trust fund conclusively as to all members. The Court held that the known beneficiaries of the trust were entitled to actual notice of the pending proceeding as opposed to notice by publication. The Court emphasized that notice will pass due process muster when "the practicalities and peculiarities of the case *** are reasonably met." *Mullane*, 339 U.S. at 314-15, 94 L. Ed. at 873, 70 S. Ct. at 657. The focus is on the "reasonableness" of the means chosen by the state. *Mullane*, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 657. Reasonableness is measured on the outcome of the balance between the "interest of the State" and the "individual interest sought to be protected by the Fourteenth Amendment." *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.

I fail to see how *Mullane* dictates that actual notice is required in this case. The City's interest in this case is a strong one. This court has recognized that the purpose of zoning, as expressed in the Municipal Code, is to limit the rights of citizens to use their property in order to promote and protect the public health, safety, comfort, morals and welfare of the people. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296 (2008). It is against these vital interests that we must weigh the interest possessed by the plaintiffs. Given the nature of plaintiffs'

-15-

interest, constructive notice is reasonable. For some 20 years, the property in this case remained unimproved, with no building permits issued or pending. On balance there is no reason for the City to have to go through the extra time and expense of providing actual notice to property holders under these circumstances.

The majority, however, holds that the City could have made reasonable efforts to contact plaintiffs and the other owners of record of the affected parcels by "perus[ing] the records of the Lake County collector and then mail notice to the [owners] of the 85 properties affected." Slip op. at 8. What the majority means by "perus[ing]" the records is unclear to me. I take the majority to mean that the City had, by virtue of the county property tax rolls, the names and addresses of all the owners of the affected parcels. Again, for the subject property, those records would only indicate the name of the trustee, who holds title to the property under the trust. In this case, notice would be mailed to the trustee who would then forward it to the beneficiaries. Thus, what the majority views as a mere perusal is, in fact, a title search or a property tax search on each of the affected parcels. In my view, this burden is unreasonable in light of the fact that the right to the use of property does not include the right to a continued zoning classification.


Practical Effects of the Majority Opinion

The majority expends some effort in trying to limit its holding to the facts of this case. Slip op. at 9-10. I am concerned that, despite the majority's insistence that its holding is limited to the facts of this case, constructive notice in zoning cases will, after today, never be deemed reasonable for purposes of procedural due process. There is nothing about these plaintiffs that would be any different from any other landowner interested in zoning proceedings, particularly when those landowners, like plaintiffs here, do not reside within the municipality.[4] Moreover, in this case, the zoning change was comprehensive and

---

[4]Section 11–13–2 requires that the notice be published within a newspaper "published in the municipality." 65 ILCS 5/11–13–2 (West 1996). The municipality in question here is Zion and thus the papers used were Zion newspapers. Plaintiffs reside in Lake Forest.

involved the entire city. The majority makes no effort to explain what the guideposts are for decisionmaking regarding reasonable notice in such situations. Is it a matter of how easy it is to locate those who are affected by the zoning change? Where will this information come from and what is the scope of a reasonable investigation in these circumstances? Does the majority have in mind a title search for all affected parcels? Or perhaps a search of the county's tax rolls for each affected parcel? Such a broad, sweeping investigation appears better suited to a facial challenge than an as-applied challenge, as the majority purports to be ruling on in this case. I note that the majority also states that 85 parcels were affected in this case, implying that the number of affected parcels is also relevant. Slip op. at 8. At what number of affected parcels would actual notice become unreasonable? Would 100 parcels be too burdensome for the City? The majority further alludes to the cost of the mailing to the City. Slip op. at 8. At what price point would the cost become unreasonable? These questions need to be answered or else municipalities will never be certain when constructive notice, as the statute permits, will be sufficient to satisfy due process. While procedural due process cases are unsuitable by their nature for precise formulae to balance interests (see *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657), in light of the imprecise nature of the property interest deemed by the majority to require due process protection, the number of parcels affected and the cost, in my view, would seem irrelevant to the balancing of interests under the majority's analysis. For these reasons, I believe that the majority opinion will cause more findings of procedural due process violations than not.

Accordingly, while I agree with the majority that plaintiffs were entitled to notice and the opportunity to be heard on the issue of the City's comprehensive zoning plan, I do not agree that the constructive notice given by the City was constitutionally deficient.

JUSTICE BURKE joins in this dissent.

Dissent upon denial of rehearing

JUSTICE FREEMAN, dissenting:

Today's modifications remedy one glaring error in the court's original opinion. As I pointed out in my initial dissent, the court had overlooked the fact that plaintiffs were land trust beneficiaries, not the property's actual owners of record. This fact is now reflected in the court's opinion. However, the legal basis for requiring the City to provide actual notice remains as much a mystery to me today as it did when I filed my original dissent, the central point of which was that plaintiffs' interest in the subject property did not require the City of Zion to provide actual notice of its rezoning efforts. See slip op. at 11 (Freeman, J., dissenting, joined by Burke, J.).

Like its predecessor, the modified opinion raises more questions than it answers and leaves unaddressed the questions that I had with the court's initial decision: What is it about plaintiffs' property interest that requires actual notice to them as opposed to constructive notice? What, exactly, is the rule of today's decision? I additionally question the court's use of "map amendment," a phrase that it has inserted at various points in its modified opinion. If this is an attempt at clarification, what, exactly, is its legal significance? Zoning amendments are governed under section 11–13–14 of the Illinois Municipal Code (65 ILCS 5/11–13–14 (West 1996)); however, today's opinion cites to, and addresses the constitutionality of, section 11–13–2 (65 ILCS 5/11–13–2 (West 1996)). So, which section of the Municipal Code is affected by today's decision? In short, other than correcting the error regarding plaintiffs' status as land trust beneficiaries, today's modifications do not address any of the legal concerns raised by the City in calling for rehearing. For those reasons, as more fully explained below, I again respectfully dissent.

Nature of the Interests Involved

Identifying plaintiffs' interests in the subject property calls for taking into account several facts which remain omitted from today's opinion even as modified. This case involves vacant parcels that had been rezoned by the City in 1971. This rezoning was at the request of the property owner at the time, who had received the City's approval

to construct 142 multiple-family units. Construction never began. Discussions were had in 1972 to sell the property to plaintiffs. At the time, plaintiffs believed that any development would require extension of a sewer line, which they knew that the City had planned to undertake, so they fronted the previous owner $35,000 to pay for the extension. Later, in November 1972, plaintiffs fronted an additional $10,000 for sewer connections for all 142 planned, multifamily units. On that same date, plaintiffs acquired the property as beneficiaries of a land trust. Zion State Bank and Trust Company held the property as trustee under Trust Number 498.[5]

The City did extend the sewer line and, from 1973 through 1974, plaintiffs constructed 8 single-family homes and 48 multifamily units. By 1978, plaintiffs had sold all the developed property. To date, plaintiffs' remaining property that had been approved for multifamily residences remains undeveloped, and the property has remained held in trust.

In 1996, the City undertook a comprehensive rezoning effort, and a zoning commission was appointed. After public hearings, the city council passed an ordinance that amended, among other things, section 102 of the City of Zion Municipal Code. Specifically, the ordinance repealed the City's then-current zoning map and incorporated a entirely new zoning map of the City in the City's Municipal Code. The new ordinance affected some 85 parcels, including the subject property, rezoning them from a multifamily residential classification to a single-family residential classification.

Initial consideration must be given to plaintiffs' status as land trust beneficiaries. The Illinois land trust is "a unique creation of the Illinois bar," which over the years has "served as a useful vehicle in real estate transactions for maintaining secrecy of ownership and allowing ease of transfer." *People v. Chicago Title & Trust Co*., 75 Ill. 2d 479, 487 (1979). Generally, once property is placed in a land trust, the owner's

---

[5] The tax documents included in the record reveal this to be the case. Plaintiffs' names and address do not appear on those records. The documents indicate the name of the trustee, Chicago Title and Trust Company, and the company's Chicago address.

interest in the real property changes to a personal property interest in the trust. *Chicago Title & Trust*, 75 Ill. 2d at 488. Legal and equitable title of the property rests with the trustee, including the right to transfer and encumber the property. *Chicago Title & Trust*, 75 Ill. 2d at 488. The central feature of the trust is that the beneficiary does not appear as an owner of record, and the trustee must keep beneficiary names confidential. Real Property Service, Illinois, Land Trusts §31:72 (1989). The trust beneficiaries retain other ownership rights such as the right of possession and the right of the use and enjoyment of the property. Trustee responsibilities typically include forwarding bills for taxes or assessments to trust beneficiaries (Real Property Service, Illinois, Land Trusts §31:58 (1989)), who are responsible for payment (*Chicago Title & Trust*, 75 Ill. 2d at 493-94). Thus, any actual notice sent in this case with respect to the subject property had to be given to the trustee, who has a fiduciary duty to forward it to plaintiffs.

Certainly, zoning changes impact the use of the property (how and for what use the property can be improved) (*City of Loves Park v. Woodward Governor Co*., 14 Ill. 2d 623, 625 (1958)), and plaintiffs, as land trust beneficiaries, would be "persons interested" in the hearings (65 ILCS 5/11–13–2 (West 1996)). Presumably, the land trust agreement between plaintiffs and the land trustee set out the methods by which the trustee would notify plaintiffs of legal notices applicable to their property. Plaintiffs' status as land trust beneficiaries does not change the question raised in this appeal: What type of notice of Zion's rezoning efforts, actual or constructive, is required for purposes of due process?

Reasonable notice depends on a balance between the state's interest and the individual interest sought to be protected by the fourteenth amendment. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950). The United States Supreme Court has held that, with respect to zoning cases, the procedures due to landowners are minimal. *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 49 L. Ed. 2d 132, 96 S. Ct. 2358 (1976). That is so because, generally, a landowner's right to use of the property does not include the right to the continuation of an existing zoning classification. *Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill. 2d 510, 517 (1978). More

-20-

pointedly, the Seventh Circuit has explained, "[z]oning classifications are not the measure of the property interest but are legal restrictions on the *use* of property" (emphasis omitted and added) (*River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994)), and property owners do not have a due process interest in one property classification over another.

An exception to this rule occurs " '[w]here there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance.' " *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 615 (2006) (quoting *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove*, 16 Ill. 2d 183, 191 (1959), and citing *Fifteen Fifty North State Building Corp. v. City of Chicago*, 15 Ill. 2d 408, 416 (1958)). In such cases, the landowner has a vested right in the former zoning classification and will be allowed to complete the construction and use the property for the purpose originally authorized irrespective of the subsequent reclassification.

These principles present a significant hurdle for plaintiffs in this case. The subject property has remained unimproved since plaintiffs built their initial 48 multiple-family residences in 1974. Plaintiffs have not alleged that they have received building permits or had even applied for them to come within the vested-rights exception. So what is the basis for court's acceptance of plaintiffs' argument that they were entitled to more than publication notice? Again, zoning classifications legally restrict the *use* of the property; they are not, in and of themselves, property interests. Plaintiffs are not entitled to a continuation of any particular zoning classification. Absent such an entitlement, plaintiffs have nothing to balance against the City's considerable interest in zoning classification, and constructive notice is sufficient to protect plaintiffs' due process rights.

The court does not address any of these concerns, but rather simply concludes that plaintiffs have a "property interest, which is affected by the zoning map amendment" (slip op. at 6). The cases cited, however, hardly support the conclusion that actual notice is required here. For example, *Chicago Title & Trust Co. v. Village of Palatine*, 22 Ill. App. 2d 264 (1959), stands for the unremarkable proposition that the public must be given notice of proposed

-21-

comprehensive zoning plans. That happened here, of course. *Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), and *Harris v. County of Riverside*, 904 F.2d 497 (9th Cir. 1990), simply hold that once published notice is given of a zoning change, new notice must be given if the property is rezoned to a different classification. Such a situation that did not occur in this case.

Only *American Oil Corp. v. City of Chicago*, 29 Ill. App. 3d 988 (1975), seems helpful. There, the appellate court held that, because a property owner had "legally protected interests," actual notice of a proposed zoning change was constitutionally required. But this was because the City had, prior to the change, issued the owner building permits for buildings to be erected on the property. *American Oil*, 29 Ill. App. 3d at 990. The zoning change rendered the resulting gas station a nonconforming use and diminished the property's value. *American Oil*, 29 Ill. App. 3d at 990-91. *American Oil* simply reinforces the notion that courts will protect the interests of property owners in zoning disputes when vested rights in a particular classification are in play. I take no issue with that. As explained above, however, plaintiffs have not asserted any vested right in the prior classification, a fact which the majority itself notes in its opinion. Slip op. at 5 n.1.[6]

More helpful in addressing the concerns raised in this case is *Braden v. Much*, 403 Ill. 507 (1949). The case involved a rezoning amendment to change an apartment house district to a specialty shop district.[7] Notice by publication was made in the Chicago Journal of

---

[6] *American Oil* is distinguishable on another ground as well. There the zoning amendment at issue concerned *only* the subject property. In contrast, plaintiffs' land was not the only parcel affected by the City's comprehensive rezoning effort.

[7] In *Braden*, the plaintiffs purchased the subject property in 1923. In January 1946, an amendatory ordinance was introduced to the Chicago City Council, upon a petition signed by neighboring property owners, seeking a change in the district's classification. The matter was referred by the City Council to its committee on building and zoning. After a public hearing, the committee recommended the amendatory ordinance for passage by the City

Commerce of the public hearing. In upholding the ordinance against the plaintiffs' due process challenge, this court stated that it made no difference that the parties "did not read the particular newspaper in which the notice was given. The Chicago Journal of Commerce is a newspaper published within the municipality and the requirements of the statute were complied with by the publication in that newspaper." *Braden*, 403 Ill. at 514. Parenthetically, the court acknowledged the custom of some municipalities, including Chicago, to give actual notice in addition to the requisite publication notice. Although the parties disputed whether such actual notice had been given, the court affirmed the trial court's ruling, holding that the custom "was complied with"; however, this court gave no indication that, had it not, publication notice of the zoning amendment in Journal of Commerce would not have been sufficient. *Braden*, 403 Ill. at 514.

Additionally, the court in *Braden* noted that, at the time the plaintiffs bought their property, it was zoned for residential and apartment purposes, and the plaintiffs had reason to rely upon the rule of the law that the classification would not be changed "unless for the public good." *Braden*, 403 Ill. at 517. The public good, however, had been established by virtue of the fact that the city council acted on evidence that the rezoning brought the property to its highest and best use–the very goal of the police power to zone. *Braden*, 403 Ill. at 516. This reinforces the notion that zoning is a restriction on the use of the property, not on a individual property interest. In other words, the court in *Braden* did not regard the plaintiffs as having a property interest in the former zoning classification. This stands in contrast to the conclusion reached today by the court that plaintiffs' entitlement to actual notice arose "out of plaintiffs' property interest, which is affected by the zoning map amendment." Slip op. at 6. Also significant is the fact that *Braden* involved only a small rezoning effort, in contrast to the comprehensive plan at issue here. If notice by publication suffices where only a known handful of people are affected by an amendment sought by neighbors as in *Braden*, why would it not suffice in the context of citywide rezoning effort affecting the entire population? Finally, *Braden* teaches that the importance of the newspaper is irrelevant.

---

Council, which ultimately enacted the ordinance in March 1946.

-23-

This leads me to comment on the particular publication in this case. In its petition for rehearing, the City notes that the court here "went out of its way to draw attention to" the fact that notices were published " 'underneath an advertisement for Oneida Bingo Casino' " and " 'underneath a scuba diving advertisement.' " The City also noted that the court had also characterized the Bargaineer, one of the newspapers in which the notice was published, as a " 'free community newspaper.' " The City argues that these comments suggest that the type of newspaper, along with the advertisement's placement, played a role in the court's analysis. The modified opinion does not address that concern. Of course, as the City points out, in smaller communities, a free advertising newspaper may be the only one published in the municipality and it might be assumed that such papers are scoured over by local residents, though this would be entirely speculative. Moreover, the City would have no control over the content of the paper surrounding the text of the notice.

### *Mullane v. Central Hanover Bank & Trust Co.*

The court says that this case calls for a "textbook application" of the analysis in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). See slip op. at 7. In *Mullane*, the Supreme Court held that a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. The proceeding there was an action to settle the accounts of a common trust fund among all the trust's members. The Court held that the known beneficiaries were entitled to actual notice as opposed to notice by publication. The Court emphasized that notice will pass due process muster when "the practicalities and peculiarities of the case *** are reasonably met." *Mullane*, 339 U.S. at 314-15, 94 L. Ed. at 873, 70 S. Ct. at 657. The focus is on the "reasonableness" of the means chosen by the state. *Mullane*, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 657. Reasonableness is measured on the outcome of the balance between the "interest of the State" and the "individual interest sought to be protected by the Fourteenth Amendment." *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.

Left unacknowledged in either the court's original or modified opinion is the significant difference between the judicial action in *Mullane* to finally settle the monetary accounts in a common trust and a municipality's legislative action, involved here, to amend its comprehensive zoning plan. Even absent this difference, the City, as I have already noted, has the countervailing interest in this case, not plaintiffs. The purpose of zoning, as expressed in the Municipal Code, is to limit the rights of citizens to use their properties in order to promote and protect the public health, safety, comfort, morals and welfare of the people. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296 (2008); see also *River Park, Inc.*, 23 F.3d at 166. It is against these vital interests that we must weigh plaintiffs' interests. Given that plaintiffs' legally protected interests do not include the right to a continued zoning classification, constructive notice is reasonable. Indeed, "courts generally hold that due process does not require personal notice to landowners or adjacent property owners, but that notice by publication, that is usually required by statute is sufficient to satisfy the 'reasonably calculated to apprise' due process standard for notice." 1 E. Ziegler, Rathkopf's Law of Zoning & Planning §12:5, at 12–18 (4th ed. 2009), citing *Mullane*, 339 U.S. at 315, 94 L. Ed. at 874, 70 S. Ct. at 657.

For some 20 years, the subject property here remained unimproved, with no building permits issued or pending. *Mullane* simply does not explain why any local governmental entity, like the City, should be made to expend time, effort, and most importantly, taxpayer expense to give any notice other than by publication to plaintiffs like these in order to effect a zoning change. In my original dissent, I noted that the court believed that the City could have made reasonable efforts to contact plaintiffs and the other owners of record of the affected parcels by "perus[ing] the records of the Lake County collector and then mail notice to the [owners] of the 85 properties affected." Slip op. at 16 (Freeman, J., dissenting, joined by Burke, J.). Left unclear was what the court meant by "perus[ing]" the records. In modifying its opinion, the court today curiously replaces "peruse" with "review." This revision does nothing to clear up one of the original questions left unanswered from the court's initial opinion–What exactly is the scope of the inquiry that the court is requiring a municipality to undertake in such cases? Does the court mean

"review" to require a title search or a property tax search on each of the affected parcels, similar, if not identical, to the type of notice required for special uses or zoning variations sought by individual property owners? See 65 ILCS 5/11–13–7 (West 1996) (requiring "written notice, either in person or by registered mail, return receipt requested, on the owners, as recorded in the office of the recorder of deeds or the registrar of titles of the county in which the property is located and as appears from the authentic tax records of such county").Such a burden would be entirely unreasonable given that the right to the use of property does not include the right to a continued zoning classification.

The Rule of Today's Case

I also took issue, in my initial dissent, with the court's attempt to limit its holding to the facts of the case. Slip op. at 9-10. However, the effect of its holding is not as easily limited as the court apparently had hoped it would be. Had it been so, the response to the court's original opinion would have been much different. Not only did this court receive a petition for rehearing from the City, but, in an unusual move, it also received a motion, filed jointly by some 11 municipalities from around the state, for leave to file a brief *amicus curiae*, in support of the City's petition for rehearing.The court, unwilling to hear from the very municipalities affected by its opinion, denied leave on January 19, 2010. The court likewise today denies the City's request for rehearing, but, in so doing, attempts to further limit its original holding.

Ostensibly, the court limits the reach of today's decision to the "type of zoning map amendment at issue." Slip op. at 7. I am not sure what the court means by this. Perhaps the court is suggesting,by using "map amendment," that the City's rezoning effort was of limited application, so providing actual notice was a matter of little moment. If so, the record belies such an implication. In fact, the record reveals the City undertook a comprehensive rezoning of the entire City, not just an amendment intended only to affect a limited area of the City. Amendments of zoning ordinances are governed by section 11–13–14 of the Municipal Code (65 ILCS 5/11–13–14 (West 1996)). An amendment to a zoning ordinance changes or alters the original ordinance or some of its provisions. *Jones v. City of Carbondale*, 217 Ill. App. 3d 85 (1991). A zoning amendment under section 11–13–14

-26-

"consists of either a change in the text of the ordinance or an alteration of the official zoning map." S. Connor, *Zoning*, in II Illinois Municipal Law Series–Annexation, Zoning & Regulatory Authority §2.19 (Ill. Inst. for Cont. Legal Educ. 2006). What occurred in 1996 does not appear to be a mere alteration of the zoning map. Rather, the City sought to enact a new ordinance affecting the entire City. The ordinance states that it is a "comprehensive amendment" that, among other things, "repeal[s] the current zoning map of the City and incorporate[s] into the Zion Zoning Ordinance a new zoning map." In addition to the zoning reclassification at issue in this case, the ordinance also designated land as public parks and open space and reclassified property in various business districts.

The ordinance cites specifically to section 11–13–2 of the Municipal Code, which provides the procedure to be followed when a municipality desires to invoke the power given to it by the legislature to create an ordinance or "to adopt a new ordinance." 65 ILCS 5/11–13–2 (West 1996).That procedure calls for, among other things, the appointment of a zoning commission to "recommend the boundaries of districts and appropriate regulations to be enforced."65 ILCS 5/11–13–2 (West 1996). The ordinance at issue states that such a zoning commission was appointed and did, in fact, make recommendations to the City's mayor and commissioners, as required by section 11–13–2. In contrast, section 11–13–14, which governs zoning amendments, does not require the appointment of a zoning commission. The court's use of "map amendment" therefore seems inconsistent with the section of the Municipal Code, section 11–13–2, that is purportedly the subject of this opinion. In any event, this confusion in terminology alone underscores the necessity for rehearing in this case.

I further note that although this case specifically addresses ordinances under the Municipal Code, similar statutes with almost identical language concerning notice by publication are contained in the Counties Code. See 55 ILCS 5/5–12007, 5–12014 (West 1996). Today's opinion necessarily affects cases brought under that Code as well. This reinforces my belief that the court's opinion will have a much broader impact than it intends, despite its attempt to limit its holding to only the specific facts of this case and the "type of zoning map amendment" involved. Can the court really mean that today's

holding is limited only to zoning map amendment cases reclassifying multiresidential zones to single-family zones where the case involves beneficial interest holders in land trusts who have fronted money to local governmental entities to extend sewer connections?

One other aspect of today's modifications merits comment. The court states that, "in accordance with familiar constitutional principles, [it] conclude[s] that [section 11–13–2] is unconstitutional as applied to the facts and the zoning amendment at issue in this case." Slip op. at 7. At the conclusion of its opinion, however, the court states that its "holding also does not affect the continuing validity of the use of publication notice under section 11–13–2 of the Municipal Code." Slip op. at 10. The court is fooling itself if it thinks that the continuing validity of section 11–13–2 will not be a matter of question after today. Given that the court has not explained what it is about these plaintiffs' property interests that required actual notice, it will be difficult for local governmental entities to know when publication notice under the statute will suffice and when it will not.

Accordingly, I remain convinced, as I was in my initial dissent, that constructive notice in zoning cases will, after today, never be deemed reasonable for purposes of procedural due process. Despite the court's superficial attempts to limit the decision's reach, the opinion reads more like a facial ruling to the constitutionality of section 11–13–2 rather than an as-applied ruling. There is nothing about these plaintiffs that would be any different from any other landowner interested in zoning proceedings, particularly when those landowners, like plaintiffs here, do not reside within the municipality.[8] Moreover, in this case, the zoning change was comprehensive and involved the entire City. The court makes no effort to explain what the guideposts are for decisionmaking regarding reasonable notice in such situations. Is it a matter of how easy it is to locate those who are affected by the zoning change? Where will this information come from and what is the scope of a reasonable investigation in these circumstances?

---

[8]Section 11–13–2 requires that the notice be published within a newspaper "published in the municipality." 65 ILCS 5/11–13–2 (West 1996). The municipality in question here is Zion and thus the papers used were Zion newspapers. Plaintiffs reside in Lake Forest.

I note that the court also states that 85 parcels were affected in this case, implying that the number of affected parcels is also relevant. Slip op. at 8. At what number of affected parcels would actual notice become unreasonable? Would 100 parcels be too burdensome for a city, or just this city? The court further alludes to the cost of the mailing. Slip op. at 8. At what point does the cost become unreasonable? In denying rehearing, the court has missed the opportunity to provide answers to these questions and, as a result, municipalities and counties will never be certain when constructive notice, all the statutes require, will be sufficient to satisfy due process. While procedural due process cases are unsuitable by their nature for precise formulae to balance interests (see *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657), in light of the imprecise nature of the property interest deemed by the court to require actual notice to satisfy due process, the number of parcels affected and the cost, in my view, would seem irrelevant to the balancing of interests under the court's analysis.

While I agree that plaintiffs were entitled to notice and the opportunity to be heard on the issue of the City's comprehensive zoning plan, I do not agree that the constructive notice given by the City was constitutionally deficient. I therefore continue to strongly dissent from the court's ultimate resolution of this case and would grant the City's petition for rehearing.

JUSTICES GARMAN and BURKE join in this dissent.